RIVES, J.
The indictment in this case sets forth the offence of passing a counterfeit note of the Fourth National Bank of Philadelphia, knowing it to be so, under the Code, ch. 193, § 3, p. 797, making “the uttering of a forged note or bill of a banking company, knowing it to be, &c.,” punishable by confinement in the penitentiary not less than two nor more than ten years.
In an act of Congress entitled “an act to provide a national currency, secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof,” the same act thus indicted is made punishable by “imprisonment at hard labor for a period not less than five nor more than seven years, and by fine in a sum .not exceeding one thousand dollars..” Acts Thirty-eighth Cong. Sess. 1, ch. 106, § 59.
This collocation of these separate enactments shows, at a glance, that the same act — namely, the passing, with a guilty knowledge of, forged bank bills, has been made an ^offence, both by this State and the Congress of the United States. - The State law, though anterior to the creation of the national banks, and consequently to the existence of their notes, employs nevertheless language of such general and comprehensive import as to embrace the note of a banking company, whensoever or by whomsoever created, or wheresoever situated.
If this act of passing this counterfeit bank bill is to be deemed one and the same offence, whether viewed in reference to the criminal code of the States or the criminal laws of the United States, then it would be conceded, I presume, that it was exclusively cognizable by the United States courts. The constitution of the United States, in Art. 111, ? 2, ch. 1, extends “the judicial power to all cases, in law and equity, arising under this constitution, the laws of the United States,” &c. The judiciary act of 24th September, 1789, after giving to the circuit courts jurisdiction concurrently with the several States of civil suits, &c., declares, they “shall have exclusive cognizance of .all crimes and offences cognizable under the authority of the United States, except where this act otherwise provides, or the laws of the United States shall otherwise direct,” &c.
Now, if this offence is defined and punished by the law of the United States of 3d June, 1864, it follows, as a necessary consequence, that it is within the exclusive jurisdiction of the Federal courts. Feely’s case, 1 Va. Cas. 321, is an authority for this position. It was an indictment for larceny of packages out of the mail of the United States, 1 ‘contrary to the form of the act of Congress of the United States in such case made and provided, and against the peace and dignity of the Commonwealth.” It was a solecism on the face of the indictment; and the court unanimously decided “that, as 'the offence described in the indictment was created by act of Congress, *the State court had not jurisdiction thereof. ’ ’ And I presume the same judgment would have been given if the indictment had been differently and more adroitly framed, so as to aver a larceny out of facts really constituting a robbery of the mail.
The principle of exclusive jurisdiction in the Federal courts, however, allows of this exception, that the laws of Congress may save to the State courts a concurrent jurisdiction. When this is done, it is not to be considered as a grant of jurisdiction from Congress, and therefore null, as in Jackson v. Rose, 2 Va. Cas. 34; but simply as restoring to the States a jurisdiction originally possessed by them concurrently with the Federal courts; and by virtue of the express provision in the judiciary act of 1789, enabling Congress to make such exception to “the exclusive cognizance of crimes,” &c. Notable instances of this saving' under the acts of Congress existed in relation to the offences of counterfeiting coin and forging notes of the United States Bank, &c. Thus, in Rasnick’s case, 2 Va. Cas. 356, no question was raised as to the rightfulness of the State jurisdiction over the offence of counterfeiting coin, doubtless because of the proviso to the act of Congress denouncing the offence. The cases of Pitman, 1 Brevard’s R. 32, and Tutt, 2 Bailey’s R. 44, rest upon the same saving in the act of Congress against the counterfeiting bills of the United States Bank. A case from Georgia, Rouse v. State, 4 Georgia R. 136, was cited, but while the question was raised, it was not decided, and Judge Eumpkin evidently inclined against the assumption of State jurisdiction. In the case of Antonio, 3 Brevard’s R. 562, on an indictment for passing counterfeit coin, the question of State jurisdiction was considered, and the jurisdiction entertained under the clause of the act of Congress declaring, “nothing in this act shall be construed to deprive the individual States of jurisdiction, *under the laws of the several States, over offences made punishable by this act.” Judge Colcock treats this as a “legislative construction of the constitution,” and Judge Bay as a “saving and reservation of the *871 right of the State courts to punish this offence under State laws, if any such salvo or reservation was necessary.” Hendrick’s case, 5 Leigh 707. “Without these provisos,” sajrs Chancellor Kent, (1 Com. 399,) “the State courts could not have exercised concurrent jurisdiction over those offences consistently with the judiciary act of 1789.” This class of cases, therefore, does not apply where the laws of Congress make no reservation of jurisdiction to the State courts.
No doubt exists as to the exclusive jurisdiction of the United States in cases affecting ambassadors, &c., cases of admiralty and maritime jurisdiction, &c., and that it rests with Congress at its election to extend this exclusive jurisdiction to all cases arising under the constitution and laws of the United States, &c. 1 Kent’s Com. pp. 426, 8-9, and 2 Story on Const. § 1740, p. 560. This avoids the repugnancy and interference of two legislative wills being exercised over one and the same subject, as shown by Judge Washington in his opinion in the case of Houston v. Moore, 5 Wheat. R. 1; and wherever the concurrent jurisdiction remains in both courts, it would seem to follow, as this able judge holds, that the plea of autrefois acquit or convict would lay to either tribunal. But the existence of this concurrent jurisdiction must be traced in cases of crimes ‘ ‘cognizable under the authority of the United States’ ’ to some express Congressional enactment, and is not a matter left to inference. Any legislation by Congress in a case within its jurisdiction supersedes all State legislation and impliedly prohibits it, Prigg v. Commonwealth of Pennsylvania, 16 Peters U. S. R. 539; Sturges v. Crowningshield, 4 Wheat. R. 122, 193.
*Thus the law seemed to stand until the decision of the Supreme Court in 1847, in the case of Fox v. The State of Ohio, 5 How. U. S. R. 410. This decision was based chiefly on the idea that the constitutional function of Congress was limited to the counterfeiting of coin; and did not extend to the separate and different offence of uttering counterfeit coin. “We think it manifest,” say the court, “that the language of the constitution, by its proper signification, is limited to the facts or to the faculty in Congress of coining and of stamping the standard value upon what the government creates or shall adopt, and of punishing the offence of producing a false representation of what may have been so created or adopted. The imposture of passing a false coin creates, produces or alters nothing; it leaves the coin where it was; affects its intrinsic value in no wise whatsoever.”
This decision seems to have been differently interpreted to the District Courts of the United States. Judge Conkling, of New York, construed it as denying jurisdiction to the United States Courts of the offence of passing counterfeit coin; and concluded by saying: “Perhaps the subject may, hereafter, upon maturer consideration, be placed by the Supreme Court on a more satisfactory footing; either by deciding the power to punish all offences against the coin to be concurrent in the nation and the States; or, which would still more effectually remove the difficulty, by reconsidering the decision of Pox v. The State of Ohio, and adopting the doctrine maintained by Mr. Justice McLean. But so long as that doctrine remains unshaken by the authority from which it emanated, I must decline to exercise jurisdiction of. the offence of passing counterfeit coin.” Monthly Law Reporter, May, 1849, p. 90.
This opinion of the Supreme Court came under the review and consideration of Judge Brockenbrough, at the September term, 1847, of his court for the Western District *of Virginia. The Law Reporter for January, 1848, p. 401. He com-batted the position of Judge Daniel, that “the language of the constitution was limited to the facts or to the faculty in Congress of coining, ” &c. ; or, in plainer language, “that the term Counterfeiting has a perfectly definite signification, and can only be applied, by any just interpretation of its meaning, to the act of making and forging, and not to the act of circulating counterfeit coin;” and sustained the constitutionality of a law of the United States, prohibiting the'circulation of counterfeit coin, as the exercise of an implied, not an express power. Unlike Judge Conk-ling, he did not deem the case of Malinda Pox in the way of this conclusion; but to reconcile its authority with his position, invoked the reasoning of Judge Daniel against the objection of a liability to be tried for one and the same crime before the separate courts of ,two governments; and resolved that reasoning in favor of a concurrent jurisdiction in both the State and Federal courts. But the gist of that case was a plain denial of the power to punish the circulation under the grant “to provide for the punishment of counterfeiting the coin of the United States;” and Judge Daniel, while resting that denial on “the established import of the phrase, counterfeiting the coin, and the description of the acts to which that phrase is restricted,” adds with emphasis, “that if within the power conferred by the clauses of the constitution above quoted, can be drawn the power to punish a private cheat effected by means of a base dollar, that power certainly cannot be deduced from either the common sense or the adjudicated meaning of the language used in the constitution, or from any apparent or probable conflict which might arise between the Federal and State authorities, operating each upon these distinct characters of offence.” Had the court in this case held that the passing of counterfeit money was cognizable under the ^constitution and laws of the United States, they need not have gone further to sustain the concurrent'jurisdiction of Ohio, than a simple citation of the saving of “jurisdiction to the courts of the individual States, under the laws of *872 the several States, over offences punishable by this act;” 4 Stat. at Large 121; which •was specially dwelt upon in the argument of the case. That this was . not done, corroborates the interpretation I have placed upon it.
This case has provoked much controversy as to its meaning. On the 3d of March, 1825, Congress passed an act (4 Stat. at Large 121,) for the punishment of persons who shall bring into the United States, with intent to pass, any counterfeit coin; and also for the punishment of the offence of passing such counterfeit coin. In 1848, at a Circuit Court for the Northern District of New York, an indictment was found, before Justices Nelson and Conkling, against Peter Marigold, for a violation of this act; and upon a disagreement of the justices upon a demurrer to the indictment, questions affecting the constitutionality of •this law, were certified to the Supreme Court. It was contended by the counsel for the defendant, that the whole question had been adjudicated in the case of Pox v. The State of Ohio; and that by virtue of that decision, the law of Congress must be held to be unconstitutional. But such was not the opinion of the court. The law was held to be constitutional; and this decision was said not to conflict with the case of Fox v. The State of Ohio. In referring to this latter case, Judge Daniel rested' it upon this position, namely: “that the same act might, as to its character and tendencies and the consequences it involved, constitute an offence against both the State and Federal governments, and might draw to its commission the penalties denounced by either, as appropriate to its character in reference to each.” The United States v. Marigold, 9 How. U. S. R. 560. Hence the deduction of Conkling, *J., from Pox’s case against the power of Congress to punish the uttering of counterfeited coin; and the conclusion of Brockenbrough, J., from the same case, in favor of a concurrent jurisdiction over such an offence,' are alike erroneous; and the Supreme Court has finally settled down in this last case, upon a separate and independent jurisdiction over the same offence in both the State and Federal courts, if we are to accept the reasoning of Judge Daniel in his effort to reconcile these two cases, as not obiter, but res adjudicata. But I am constrained to believe that the assertion in this last case, of the power of Congress to ' punish the uttering of counterfeit coin, is scarcely reconcilable with the declaration, heretofore quoted from Pox’s case, “ that the language of the constitution, by its proper signification, is limited to the facts or to the faculty in Congress of coining,” &c.
This doctrine of parting offences so as to be triable before separate tribunals, and rendering offenders for the same act amenable both to State and Federal authorities, is for the first' time hinted at in Pox’s case, and distinctly enunciated in Marigold’s. In view of the conceded fact that the judicial power of the United States exclusively embraces offences created by Congress, it would seem strange that that jurisdiction could be invaded by a State law taking cognizance of the same offence, under the pretext that it bears a special relation to the citizens of the State. The Federal government, as well as the State government, acts directly upon the citizen ; and by the constitution, 1 ‘the citizens of each State are entitled to all privileges and immunities of citizens in the several States.” The people of the United States are thus citizens of two governments; but these governments act in different and well-defined spheres. “The constitution of the United States,” however, “is the supreme law of the land; and the judges in every State are bound thereby, *anything in the constitution or laws of any State to the contrary notwithstanding.” It does not, thex'efore, consist with the theory of our governments, State and Federal, to attribute to the latter an exclusive cognizance of an offence while j-ou tolerate jurisdiction of it in the former, on the plea that the same act is resolvable into an offence also against the State. This is a virtual conflict of authority forbidden by our written constitutions. The judicial power extends to all cases affecting ambassadors; can any State punish them for infractions of its laws?, to all cases of admiralty and maritime jurisdiction; can such cases be transmuted by any legal alchemy into subjects of State jurisdiction? Shall the exclusive cognizance of Congress and the exclusive jurisdiction of the United States courts be ousted and defeated by this ingenious device of treating the same act as also coming within the purview of State laws? If this doctrine be correct, such results must follow. All the provisions of the constitution securing to Congress an exclusive power, or vesting in its courts an exclusive jurisdiction, may be set at naught and nullified by State laws. It would be in vain for Congress to have the power of punishing the counterfeiting of its securities and coin; the States, under this doctrine, could divest it by laws against the same offences. In like manner, the offence of robbing the mail might be treated as “larceny” in a State court; and the penalties affixed by Congress, as in the case at bar, to the passing of counterfeited bills of the national banks, be exchanged for the penalties under State laws upon the passing of any forged bills. This difficulty is not obviated by the comity of leaving the jurisdiction finally to the tribunal that first assumes it; 16 Mass. R. 171; 3 Yerg. 167; Payne’s Cir. Ct. R. 621; nor, when the danger arises in this way of being punished twice for the same offence, by an application to the President to order a nolle prosequi, or grant a pardon. Such *resorts or securities for personal protection are too frail, as resting in the discretion and practice of courts. A higher guarantee exists in the constitution under the fifth article of the amendments. While it imports, a restriction upon the govern *873 ment of the United-States, and not of the separate States, it is nevertheless a part of that “supreme law of the land,” to which we, as judges, are bound to conform. I do not feel at liberty, therefore, to sustain any doctrine like this, which seems to me to contravene the fundamental polity of the United States, and especially this great constitutional guaranty of the citizen against the harassment of repeated prosecutions for the same offence.
But I must admit that this doctrine, in all its breadth and consequences, is avowed and maintained by Chief Justice Taney in the Circuit Court at Richmond, May term, 1849, in the case of United States v. Amy, reported in the quarterly haw Journal (A. B. Guigon, editor), for July, 1859, p. 163. The direct and material point decided in that case was that the slave Amy came under the designation of “a person” in the 22d section of the act of Congress, passed March 3d, 1825, which provides, that if “any person shall steal a letter from the mail, the offender shall, upon conviction, be imprisoned not less than two nor more than ten years.” Collateral questions as to the competency of Congress to deprive the owner of his slave by imprisonment and without compensation, were also discussed and disposed of by this eminent judge. In the conclusion of his opinion, he uses this strong and decisive language: “In maintaining the power of the United States to pass this law, it is, however, proper to saj', that as these letters with the money in them were stolen in Virginia, the party might undoubtedly have been punished in the State tribunals, according to the laws of the State, without any reference to the postoffice or the act of Congress, ^'because, from the nature of our government, the same act may be an offence against the laws of the United States and also of a State, and be punishable in both. This was considered and decided in the case of Fox v. State of Ohio, 5 How. U. S. R. 410, and in the case of United States v. Peter Marigold, 9 How. U. S. R. 560; and his punishment in one sovereignty is no bar to his punishment in the other. Yet, in all civilized countries, it is recognized as a fundamental principle of justice, that a man ought not to be punished twice for the same offence. And if this party had been punished for the larceny in the State tribunal, the court would have felt it to be its ditty to suspend sentence, and to represent the facts to the President, to give him an opportunity of ordering a nolle prosequi or granting a pardon. But there does not appear to have been any proceeding in the State tribunals or under the State laws to punish the offence. ”
This language is strong and persuasive, but does not attain to that authority and obligation which attach to the judgment of a court of final resort. Authorities to the contrary, however, abound, and especially on the point on which this case turns, namely, that the State courts cannot take jurisdiction of a prosecution for an offence against an act of Congress, or for the recovery of a penalty for the violation of the penal laws of the United States. Commonwealth v. Feeley; 1 Va. Cas. 321; Jackson v. Rose, 2 Ibid. 34; United States v. Lathrop, 17 Johns. R. 4; Haney v. Sharp, 1 Dana’s R. 442; State v. McBride, 1 Rice’s So. Ca. R. 400; Mattison v. Missouri, 3 Missouri R. 421, &c.
The manner in which this question is stated by that eminent jurist, Chancellor Kent, shows the inclination of his mind. He says: “And here the enquiry naturally suggests itself, can the State courts, consistently with those decisions, sustain a criminal prosecution for forging the *paper of the Bank of the United States, or for counterfeiting the coin of the United States? These are cases arising under acts of Congress declaring the offence. The State courts have exercised criminal jurisdiction over these offences as offences against the State; but it is difficult to maintain the jurisdiction upon- the doctrine of the Supreme Court of New York in the case of Bathrop; and if it be entertained, there are difficulties remaining to be definitely cleared. These difficulties relate to the effect of a prosecution in one jurisdiction upon the jurisdiction of the concurrent court, and to the effect of the executive power of pardon of the crime under one government, upon the claim of concurrent jurisdiction. ” 1 Kent’s Com. 404 (marg.).
Amid this conflict of authorities upon a matter of constitutional construction, where I owe something to my own convictions, however humble, I feel at liberty to adopt the reasoning and conclusion most consistent with the views I have obtained from patient study and careful examination. Convinced as I am of the repugnancy of this doctrine of a dual jurisdiction and punishment of the same act to the frame of our complex government, the orderly and harmonious working of all its parts, the co-ordinate efficiency and action, without jostling, of its different sets of courts, and above all, to the constitutional prohibition of two arraignments for the same offence, I am constrained, though with extreme reluctance and diffidence, to express my dissent, however unimportant, and to declare myself, for the reasons given, for a reversal of the judgment below.
JOYNRS, J.
The plaintiff in error was prosecuted and convicted under the statute (Code ch. 193, § 3, p. 797), for the offence of uttering and attempting to employ as true a forged bank note, purporting to be a note of one of the national banks of Philadelphia. It was objected, on a motion to arrest the judgment, that the courts of the ‘"State have no jurisdiction to entertain a prosecution for that offence. The reason assigned is, that the uttering a forged note of a national bank has, by the act of Congress under which those banks have been established, been *874 declared to be an offence against the United States; and that, by the provisions of the act of Congress passed September 24, 1789, known as the Judiciary act, the courts of the United States have exclusive cognizance of that offence.
The judiciary act of 1789, section 11, provides that the Circuit Courts of the United States “shall have exclusive cognizance of all crimes and offences cognizable under the authority of the United States,” unless the laws of the United States otherwise direct. The argument is, that when Congress declares any act to be an offence against the United States, and provides for its punishment as such, it is not competent for the court of a State to entertain a prosecution founded upon the same act under the law of a State making it an offence against the 'State, unless the express consent of Congress has been given for that’ purpose. Congress has not given such consent in respect to the offence of uttering forged notes of the national banks.
The act described in the indictment is simply a cheat practiced or attempted by one citizen of Virginia upon another, by means of a forged paper purporting to be a bank note. Whether the forged paper by which such a cheat is effected or 'attempted, purports to be the note of a State bank or the note of a national bank, the offence pertains equally to those matters of internal police which, by the acknowledged theory of our institutions, belong generally- to the jurisdiction of the States. This jurisdiction of the States constitutes a cardinal feature of our system of government. Whether, in respect to the particular offence described in the indictment, it is suspended and displaced by the paramount jurisdiction of the United ^States, is the question now before us. It is a grave and important question. It the relative rights and powers of the State and Federal governments, and the rights and liabilities of the citizen in respect to both. And it is also a question of practical importance. The authorities of the State are dispersed throughout all parts of the Commonwealth; and it is reasonable to suppose that the detection and punishment of this class of offences will be more effectually secured by them than they can be if confided only to the authorities of the United States, which are few in number, and confined to a few localities. If, however, the jurisdiction .over this class of offences belongs exclusively to the United States, we ought not to usurp it, and have no disposition to do so. If, on the other hand, it belongs to the State, we have no right to surrender it. In the language of the Supreme Court: 1 ‘The duties of this court to exercise jurisdiction where it is conferred, and not to usurp it where it is not conferred, are of equal obligation. The constitution, therefore, and the law are to be expounded without leaning the one way or the other.” Bank of United States v. Deveaux, 5 Cranch R. 87.
It is not necessary in this case to consider at large the construction of section 2, article 3, of the constitution of the United States in relation to the judicial power, or the cases in which the jurisdiction of the courts of the United States is exclusive, or those in which a concurrent jurisdiction may be exercised by the courts of the several States. The rules by which these two classes of cases are to be discriminated do not appear to be precisely determined by the decisions of the Supreme Court, as may be seen from the case of The Moses Taylor, decided at the last term of that court, and reported in 4 Wall. U. S. R. 411. That case, however, affirms it to be a general rule, that while the judicial power of the United States is, in.*some cases, unavoidably exclusive of all State authority, it may be made so in all others, at the election of Congress.
It cannot be questioned that the class of offences to which that now before us belongs, was within the jurisdiction exercised by the States before the adoption of the Federal constitution. The jurisdiction over this class of offences still belongs to the States, unless they surrendered or lost it in the formation of that constitution. To show that they did so, it is not enough, according to the acknowledged rule of construction, to show, that jurisdiction over thq same class of offences was granted to the United States by the constitution. To deprive the States of an authority or jurisdiction which they had before the adoption of the constitution there must be either an express grant of exclusive authority or jurisdiction over the same subject or class of cases to the United States; or there must be a grant of authority or jurisdiction to the United States not in terms exclusive, and an express prohibition against the exercise of like authority or jurisdiction by the States; or there must be authority or jurisdiction granted to the United States, to which a similar authority or jurisdiction in the States would be absolutely and totally contradictory and repugnant. Federalist No. 32; Ibid. No. 82; Houston v. Moore, 5 Wheat. R. 1; 1 Kent Com. 400; Story on Const. §§ 436-447.
In the present case there is no express grant of exclusive jurisdiction to the United States, nor any express prohibition to the States. If, therefore, the States have lost their ancient jurisdiction over any offence of this class, it must be because jurisdiction over the offence has been given to the United States, to which a like jurisdiction in the States would be wholly contradictory and repugnant.
Congress having, as must be assumed, authority to establish *the system of national banks, had the authority to protect their circulation from being discredited by counterfeits, in order to secure the usefulness of the system. When, therefore, the forged note employed in effecting a cheat purports to be the note of a national bank, Congress has a right to declare the act of uttering or attempting to pass such note to -be an offence against the United States; and has accordingly *875 done so. Literally speaking, the act of Congress and the statute of the State punish the same identical act, namely, the act of uttering or attempting to pass as true the forged note. But the two statutes aim at the accomplishment of different objects; the authority under which they were enacted is derived from different sources, and though the offence which each of them punishes is comprised in one and the same act, there is really an essential difference in the character of the two offences.
There is nothing peculiar in respect to the law of the State, as to the offence now in question, to render the jurisdiction of the State courts under the law of the State incompatible with that of the Federal courts under the act of Congress, if it would not be so upon general principles in all cases whatever. The law of the State is in entire harmony with the act of Congress, and seeks, though for different reasons and in pursuance of a different policy, to effect the same object, to wit, the suppression of counterfeits.
A conflict of jurisdiction between the Federal and State courts may occur under different circumstances. Thus, an act of Congress and the statute of a State may declare the same identical act to be an offence; as, for example, the act of counterfeiting the coin, or the act of uttering and passing counterfeit coin. In other cases the act of Congress and the law of the State are aimed at different offences, but in doing an act prohibited by the act of Congress the offender also does an act prohibited by the law *of the State. For instance, a party may commit the offence of robbing the mail, and commit, at the same time, the offence of assault and battery. In the discussions to which this subject has given rise, these and probably other distinctions have been claimed to make a difference in the principle governing the cases. At an early period after the adoption of the constitution, an eminent jurist expressed the opinion, that a man could not, by doing any one act, violate, at the same time, the laws of the United States and the laws of any one of the States, and that where a party in the course of doing an act which violates a law of the United States, also does an act which violates the law of a State, he really commits but one offence, and that the offence against the United States; on the ground that the greater crime includes and swallows up the less. Letter of Judge Chase to the Governor of Maryland, October 6, 1794. Journal of Jurisprudence, 262. An able writer at a much more recent period (1845), advocated a similar view in respect to certain offences, on the ground that an offence against one State ought to be considered as merged in an offence against all the States. 4 Am. Law Magazine, 318 (334-340). Others, while admitting that the same act may be declared an offence both by act of Congress and by State law, and punished under either one, have contended that a judgment of conviction or acquittal under either one may be pleaded in bar of a prosecution under the other, and that, according to the rules of comity which prevail between concurrent jurisdictions, the one which first attaches should be allowed to proceed to judgment. Per Washington, J. Houston v. Moore, 5 Wheat. R. 1; Rawle on Constitution, 205, 206.
Others again have contended, as a general proposition, that when any act has been declared by Congress to be an offence against the United States, it is incompatible and ^repugnant for a State Legislature to declare the same act to be an offence against the State. This has been maintained chiefly on the ground that the offender would thereby be exposed to be twice punished, or twice put in jeopardy, for the same offence. This view was maintained by the Supreme Court of Missouri in the case of Mattison v. The State, 3 Missouri R. 421; and by Mr. Justice McLean, in the two cases hereafter cited from 5 Howard and 14 Howard.
The conflict and variety of opinions on this subject may be further seen by reference to the following cases: State v. Antonio, 3 Brevard R. 562; State v. Tutt, 2 Bailey R. 44; Commonwealth v. Fuller, 8 Metc. R. 313; State v. Wells, 2 Hill S. C. R. 687; State v. Harlan, 1 Dougl. Mich. R. 207; Rouse v. State, 4 Georgia R. 136; Hendrick’s case, 5 Leigh 709.
I have made this brief allusion to some of the conflicting views which have been entertained on this subject, in order to show the confusion and perplexity in which it has, until recently, been involved, and the importance and value of the decisions of the Supreme Court to which I shall now refer.
The first of the cases alluded to is that of Fox v. State of Ohio, 5 How. U. S. R. 410, decided in 1847. The precise question in that case was, whether the State of Ohio had authority to provide by law for punishing the offence of passing counterfeit coin. The case was very fully and ably argued. Mr. Justice McLean was of opinion, that such a power could not be exercised by Ohio, because it would be incompatible with the exercise of the same power by the United States; which he thought clearly existed. But all the other judges concurred in holding that the State possessed the power.
There are some expressions in the opinion in that case, which throw doubt upon the power of Congress to provide *for punishing the offence of passing counterfeit coin. But the case was not put on that ground, and subsequent parts of the opinion affirm the right of the State to provide for punishing the act of passing counterfeit coin, as an offence against the State, even though Congress should provide, and have the right to do so, for punishing it as an offence against the United States. The court further held, that if the party should be punished twice for the same act, he could not complain that the fifth article of the amendments to the constitution had been violated, which pro *876 vides that no person shall be subject, for the same offence, to be twice put in jeopardy of life or limb ; but that, in point of fact, the benignant spirit in which both the State and Federal systems are administered, would preclude all danger of such double convictions, unless it might be in cases of special enormity, or demanding unusual rigor.
In United States v. Marigold, 9 How. U. S. R. 506, it was held that Congress hád the power to protect the coin by providing for the punishment of persons who bring counterfeit coin into the United States with intent to pass it, and also for the punishment of persons who utter and pass any such counterfeit coin. The court expressly re-affirms what it was said was laid down in Fox v. State of Ohio, ‘with a view of avoiding conflict between the State and Federal jurisdictions,” namely, “that the same act may, as to its character and tendencies, and the consequences it involves, constitute an offence against both the State and Federal governments, and may draw to its commission the penalties denounced by either, as appropriate to its character in reference to each.
The same principle was again affirmed in Moore v. People of Illinois, 14 How. U. S. R. 13. That was an indictment in a court of the State of Illinois, under a statute of that State, for harboring a fugitive slave. It was contended *that the statute of the State was void because it provided for the punishment of the same act for which, by .the act of Congress of 1793, the offender was subjected to a penalty •of $500, to be recovered by the owner of the 'slave; and that so the party would be subject to a double punishment for the same offence. The court held, that the two statutes did not provide for the punishment of the same identical acts; but that even if they had done so, the consequences insisted on would not have followed. The language of the court on this point is very clear and emphatic. “But admitting,” said the court, “that the plaintiff in error may be liable to an action under the act of Congress for the same acts of harboring and preventing the owner from retaking his slave, it does not follow that he would be twice punished for the same offence. An offence, in its legal signification, means the transgression of a law. A man may be compelled to make reparation in damages to the injured party, and be liable also to punishment for a breach of the public peace in consequence of the same act; and maj7 be said, in common parlance, to be twice punished for the same offence. Every citizen of the United States is also a citizen of a State or Territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for the infraction of the laws of either. The same act may be an offence [under] or transgression of the laws of both. Thus an assault upon the Marshal of the United States, and hindering him in the execution of legal process, is a high offence against the United States, for which the perpetrator is liable to punishment ; and the same act may be also a gross breach of the peace of the State, a riot, assault, or murder, and subject the same person to punishment, under the State laws, for a misdemeanor or felony. That either or both may, if they see fit, punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender *has been twice punished for the same offence, but only that by one act he has committed two offences, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other; consequently, this court has decided, in Fox v. The State of Ohio, that a State may punish the offence of uttering or passing false coin, as a cheat or fraud practiced on its citizens; and in the case of the United States v. Marigold, that Congress, in the proper exercise of its authority,' may punish the same act as an offence against the United States.”
This case was decided in 1852, since which time the question does not appear to have been raised in the Supreme Court.
In the case of United States v. Amy, a slave prosecuted for the offence of robbing the mail, and tried in the Circuit Qourt of the United States for the Eastern District of Virginia, before Chief Justice Taney and Judge Halyburton, at May term, 1859, the Chief Justice laid down the very same principles in very strong terms as the clear and settled law. He said : “In maintaining the power of the United States to pass this law [punishing a slave by imprisonment for robbing the mail] it is, however, proper to say, that as these letters with the money in them were stolen in Virginia, the party might undoubtedly have been punished in the State tribunals, according to the laws of the State, without any reference to the postoffice or the act of Congress; because, from the nature of our government, the same act may be an offence against the laws of the United States and also of a State, and be punishable in both. This was considered and decided in the Supreme Court of the United States in the case of Fox v. State of Ohio, and in the case of United States v. Marigold, and the punishment in one sovereignty is no bar to his punishment-in the other.”
*“Yet, in all civilized countries, it is recognized as a fundamental principle of justice that a man ought not to be punished twice for the same offence. And if this party had been punished for the larceny in the State tribunal, the court would have felt it to be its duty to suspend sentence, and to represent the facts to the President, to give him an opportunity of ordering a nolle prosequi or granting a pardon.” Richmond Law Journal, July, 1859, pp. 201, 202.
These principles must be regarded as the settled doctrine of the Supreme Court. They ought to set at rest the disputed questions to which they apply. They appear to me to be reasonable and just. But if I thought otherwise, I should feel no hesitation in *877 yielding to the decisions of the Supreme Court on a question of this character as authority binding upon me. They are in conformity with the decision of the General Court of Virginia in Hendrick’s case, 5 Leigh 707. That was a prosecution for passing a forged check purporting to be a check of the cashier of the Bank of the United States. In delivering the opinion of the court, Judge Daniel said: “It was urged by the prisoner’s counsel, that the judgment ought to have been arrested, on the ground that the courts of Virginia ought not to punish criminally any forgery of the notes, bills or checks of or upon the Bank of the United States, because this is an offence punishable by the courts of the United States; and if a State court, which cannot oust the courts of the United States of their jurisdiction, should proceed, it might happen that a man might be punished twice for the same offence. The answer to this is, that the law of Virginia punishes the forgery, not because it is an offence against the United States, but because it is an offence against this Commonwealth, ■committed within its limits, and the punishment of it is designed for the protection of our own citizens.”
*The act of Congress by which the forging of checks, &c., of the Bank of the United States was made punishable as an offence against the United States, contained a provision to the effect that nothing therein should prevent the courts of the several States from taking cognizance of the same acts as offences under State laws. But that proviso did not, as is conceded on all hands, confer jurisdiction upon the State courts, and is immaterial therefore to the purpose for which I now cite this case. The only effect claimed for such a proviso, as we shall see hereafter, is, that it relinquishes, as to the particular ■class of offences, the exclusive jurisdiction -of the courts of the United States under the provisions of the preceding act, and allows the courts of the States to exercise a jurisdiction which they might have exercised if not prohibited by the grant of exclusive jurisdiction to the courts of the United States by the judiciary act.
This case, therefore, and every other which holds that a prosecution may be maintained in a State court, under a State law, for the offence of counterfeiting the coin, or for passing counterfeit coin, or for any other offence against the coin provided for by act of Congress, or for the offence of forging a note or check of the Bank of the United States, or of passing such forged note or check, is an authority for the proposition which I have been maintaining, that there is no incompatibility or repugnance between the jurisdiction of the courts of the United States to punish a man for a particular act, as an offence against the United States under an act of Congress, and the jurisdiction of the courts of a State to punish the same man for the same act, as an offence against the State under the laws of the State. The cases of this sort are numerous, and many of them are cited in a former part of this opinion.
I do not see how the allowance of such a concurrent jurisdiction to the State courts can lead to any collision ^between them and the Federal courts, unless it should arise from a disregard of the rule of comity which prevails between concurrent jurisdictions, that the one which first takes cognizance of a subject matter shall be allowed to proceed without interference by the other. Taylor & al. v. Carryl, 20 How. U. S. R. 583; Freeman v. Howe & al., 24 How. U. S. R. 450. Such a concurrent jurisdiction has long been exercised in respect to certain classes of criminal acts, and I am not aware that it has led to any such collision. We must suppose that the Federal and State authorities will be exercised in good faith, without jealousy, and with a view to the general good. So exercised, there need be no sort of conflict between them. But if there should be more ground than I think really exists to apprehend such a collision, it would only present an instance of those “occasional interferences” spoken of in the Federalist, which are no ground, in the absence of absolute incompatibility and repugnance, for ousting the States of an authority which they exercised before the formation of the constitution. No. 32.
I do not think there is any solid ground for the objection that this doctrine would, in its practical working, lead to injustice and oppression, by subjecting offenders to double punishment for the same act. We must suppose that the criminal laws will be administered, as they should be, in a spirit of justice and benignity to the citizen, and that those who are entrusted with their execution will interpose to protect offenders against double punishment, whenever their interposition is necessary to prevent injustice or oppression ; and that if, in any case, they should fail to do so, the wrong will he redressed by the pardoning power. We may safely assume that there will be no cases of double punishment hereafter, as, I presume, there have been none heretofore, except, perhaps, in cases of great enormity, or in cases attended by some peculiar circumstances, *'in which the ends of justice could not be otherwise secured.
It is said that the security tiras afforded to the liberty of the citizen is altogether too precarious. But it is not more so than in any other case where no absolute rule has been prescribed, which is to govern in all cases. Whenever a power is bestowed which may be exercised or not exercised, according to the discretion of the court, or where the manner or extent of its exercise depends on the discretion of the court, injustice may be done by an abuse of the discretion; and it may not be possible to prevent or correct it. The la w in every such case confides, of necessity, in the integrity and justice of the courts.
It must be remembered, however, that these objections to the practical conse *878 quences of allowing such a concurrent jurisdiction to the State courts, if well-founded, do not afford a conclusive argument against the existence of the jurisdiction. They could, at most, only, turn the scale, if the argument, on other grounds, left the question in doubt.
I conclude, therefore, that there is nothing in the relation between the State and Federal governments, or in the nature of the jurisdiction itself, which makes the jurisdiction of the courts of the United States to punish the act of passing a forged note of a National Bank as an offence against the United States, necessarily exclusive of the jurisdiction of the State courts to punish the same act as an offence against the State. It remains to consider whether it has been made so by act of Congress.
As I have said before, the offence in this case belongs to a class over which the States and their courts exercised jurisdiction before the adoption of the Federal constitution. How far it is competent for Congress to prohibit the State courts from exercising jurisdiction, under State *laws, over any such class of criminal acts, by giving exclusive cognizance of them to the courts, of the United States, has not been determined by the Supreme Court; and it is not necessary for me to express an opinion on the question. This question was not in the mind of the court when it was said in Martin v. Hunter’s lessee, 1 Wheat. R. 304, (337,) and in The Moses Taylor, 4 Wall. U. S. R. 411, “that the judicial power of the United States is unavoidably, in some cases, exclusive of all State authority, and in all others may be made so at the election of Congress.’’ This is evident from the context of this passage in the for.mer case. The court had just adverted with approbation to an argument which had been urged, that it is imperative on “Congress to vest all the judicial power of the United States in the shape of original jurisdiction, in the supreme and inferior courts created under its own authority.” And immediately after the passage above quoted, and showing its meaning, are the following passages: “No part of the criminal jurisdiction of the United States can, consistently with the constitution, be delegated to State tribunals. The admiralty and maritime jurisdiction is of the same exclusive cognizance; and it can only be in those cases where, previous to the constitution, State tribunals possessed jurisdiction independent of national authority, that they can now constitutionally exercise a concurrent jurisdiction. Congress throughout the judicial act, and particularly in the ninth, eleventh and thirteenth sections, has legislated upon the supposition, that in all the cases to which the judicial power of the United States extended, they might rightfully vest exclusive jurisdiction in their own courts.”
, The opinion of Mr. Justice Washington in Houston v. Moore, 5 Wheat R. 1, is relied upon by the counsel for the plaintiff in error, to sustain the proposition, that Congress may thus exclude the jurisdiction of the *State courts under State laws; and that it did so by the provision of the judiciary act giving to the courts of the United States exclusive cognizance of all crimes and offences cognizable under authority of the United States, unless otherwise provided by that act, or by some other act of Congress; so that the express consent of Congress ivas necessary to enable the State courts to exercise jurisdiction under State laws, over acts declared by Congress to be offences against the United States.
It does not appear to what extent the views in question received the concurrence of the other judges, one of whom declared in his opinion, that the views of the judges composing the ■ majority, coincided in but one thing, namely: that there was no error in the judgment appealed from, and that no point whatever was decided, except that the fine was constitutionally imposed upon the plaintiff in error. Per Johnson, J., p. 47.
The single opinion'of this eminent judge, however, is entitled to great weight, and deserves further consideration.
It must be observed that Mr. Justice. Washington regarded the case then before him as involving the jurisdiction of the State courts to “enforce the laws of Congress,” as he said in one place; or as he said in another place, to “adjudicate in a case which depends on a law of Congress and to enforce it.” The case before us, on the other hand, involves the question, whether the State courts can take jurisdiction of an offence against the State created by a statute of the State.
Houston, in that case, had been tried by a court-martial of the State of Pennsylvania, under an act of that State passed in 1814, providing that officers and privates of the militia neglecting or refusing to serve when called into actual service in pursuance of an order or requisition of the President of the United States, shall be liable to the *penalties defined in the act of Congress passed February 28, 1795, or to any penalty which may have been prescribed since the date of that act, or to an3r which might be thereafter prescribed by any law of the United States, and providing for the trial of such delinquents by a State court-martial, &c. The learned judge, after stating the character of the case in the general terms above quoted, says that “the offence to be punished grows out of the constitution and laws of the United States, and is, therefore, clearly a case which might have been withdrawn from the concurrent jurisdiction of the State tribunals.”
Proceeding to consider the question whether, as Congress has not given exclusive jurisdiction to courts-martial deriving their authority from the United States, the courts-martial of the 'State can exercise jurisdiction, the learned judge refers to the doctrine of the Federalist, that Congress “may commit the decision of causes arising *879 upon a particular regulation, to the Federal courts only, yet that in every case in which the State tribunals should not be express^ excluded by the acts of the national legislature, they would, of course, take cognizance of the causes to which those acts might give birth.” The judge says that he perceives no objection to this doctrine, so long as the power of Congress to withdraw the whole or any part of these cases from the jurisdiction of the State courts is, as he thinks it must be, admitted.
This part of the opinion has no reference to prosecutions in the State courts for offences against the State under State laws. It has reference to cases arising under acts of Congress, and affirms the right of the State courts to take cognizance of them, unless the jurisdiction of the courts of the United States is made exclusive. This is sufficiently obvious from the language of the judge. But it will appear perhaps even more clearly from the eighty-second number of the federalist, to which the judge refers.
*The learned judge then refers to the practice of the general government as confirming this doctrine. He cites the judiciary act as showing the opinion of Congress, that a mere grant of jurisdiction generally to the courts of the United States was not sufficient to vest the exclusive jurisdiction. He then proceeds as follows: “In particular,' this law grants exclusive jurisdiction to the Circuit Courts of all crimes and offences cognizable under the authority of the United States, except where the laws of the United States should otherwise provide ; and this will account for the proviso in the act of the 24th of February, 1807, ch. 75, concerning the forgery of the notes of the Bank of the United States, that nothing in that act contained should be construed to deprive the courts of the individual States of jurisdiction, under the laws of the several States, over offences made punishable by that act. A similar proviso is to be found in the act of the 21st of April, 1806, ch. 49, concerning the counterfeiters of the current coin of the United States. It is clear that, in the opinion of Congress, this saving was necessary in order to authorize the existence of concurrent jurisdiction by the State courts over those offences, and there can be very little doubt but that this opinion was well founded. The judiciary act had vested in the Federal courts exclusive jurisdiction of all offences cognizable under the authority of the United States, unless where the laws of the United States should otherwise direct. The States could not, therefore, exercise a concurrent jurisdiction in those cases, without coming into direct conflict with the act of Congress. But by these savings Congress did provide, that the jurisdiction of the Federal courts in the specified cases should not be exclusive; and the concurrent jurisdiction of the State courts was instantly restored so far as, under State authority, it could be exercised by them. ’ ’
With deference to the authority of this eminent judge, *1 submit that this reasoning is not satisfactory. The
object of the judiciary act was to establish the judiciary system of the United States, and to regulate the jurisdiction of the courts of the United States, as far as this was not done by the constitution. In respect to crimes, the object was to regulate the jurisdiction of those courts over such crimes as could be prosecuted and punished under the authority of the United States. It was thought by many, and doubtless by the framers of that act, though it has since been settled otherwise, that the courts of the United States might take cognizance of offences at common law, without the authority of an act of Congress; and hence it was, I apprehend, that they used the general expression, “cognizable under the authority of the United States.” But the courts of the United States could not take cognizance of any offence that was not a violation of some law of the United States, whether common law or statute, and it was of such violations of the laws of the United States that exclusive cognizance was given to the Circuit courts, unless otherwise provided by law. If so otherwise provided, the jurisdiction of the Circuit courts thus declared to be exclusive, might be exercised equally by the courts of the States. It was long a subject of controversy and doubt whether Congress might not thus confer jurisdiction upon the courts of the States to enforce the laws of the United States. See Jackson v. Rose, 2 Va. Cas. 34; 1 Kent Com. 401-405. But what has this to do with the jurisdiction of the State courts to punish offences against State laws, even though the offences consist in acts declared by Congress to be offences against the United States? The object of this act of Congress had no reference to offences against the laws of the States, which were the concern of the States, and not of the United States, and could not be made the courts of the United States. It was no part of the object of that act *to regulate the jurisdiction of State courts under State laws, which belonged to the State Legislatures, and not to Congress ; and the act makes no reference to State courts, except to say when they may and when they may not exercise the same jurisdiction that is vested in the courts of .the United States.
It is obvious that the learned judge construed the terms “crimes and offences,” in the eleventh section of the judiciary act, as signifying the acts by the doing of which crimes and offences are committed. It this way he reaches the conclusion that the act of Congress vests in the courts of the United States exclusive cognizance of those acts ; and I apprehend it could be reached in no other way. But this is not the proper sense of these words. A crime or offence is the transgression of a law; and the same act may constitute several offences. We have seen that the same act may be an offence against the United States, and at the same time an offence against the State. So the *880 same act may constitute several offences against the laws of the State; of which numerous illustrations are collected in 2 Reading Criminal Cases, 555. The terms, “crimes and offences,” therefore, do not properly signify the acts by which the laws ■are violated, but they signify the violations of law which those acts produce. And I see no reason for holding that they were not used in this sense in the judiciary act. Congress could give, and intended to give, to the courts of the United States cognizance of criminal acts, only so far as they constitute violations of the laws of the United States. So far as such acts violate the laws of the' States, it was not in the power of Congress to confer the cognizance of them upon the Federal courts.
The learned judge did not fail to see that an act done by a party may violate a law of the United States, and so be an offence against the United States, and, at the same time, violate a law of the State, and so be an offence *against the State. But he did not clearly distinguish between the act and the offence. Hence he says, in a subsequent part of the opinion, that when Congress allows the State courts to punish under State laws, the same acts that are made offences against the United States, the sentence of conviction or acquittal in either court (State or Federal), may be pleaded in bar of a prosecution before the other. And so he thinks that where Congress has vested in the courts of the United States exclusive cognizance of crimes and offences against the United States, the courts of the States cannot exercise jurisdiction over the same acts, under State laws, as offences against the State, without coming into conflict with the act of Congress. But we have seen that there is no incompatibilitj' or conflict between such an exercise of jurisdiction by State courts, under State laws, and by the courts of the United States, under acts of Congress.
I think these observations are sufficient to show that the views of Mr. Justice Washington are not well founded, and that the act of 1789 does not exclude the State courts from taking jurisdiction of an offence against the State under a State law, committed by the same act which constitutes an offence against the United States, under an act of Congress. It follows, that such a saving proviso as we have been considering, is not necessary' to enable the courts of the States to exercise their jurisdiction in the cases alluded to.
This conclusion is fully sustained by the cases of Fox v. State of Ohio; Moore v. People of Illinois; United States v. Amy; and Hendrick’s case, before cited. In the first and last of these cases, the acts of Congress contained provisos to save the jurisdiction of State courts under State laws. But the existence of the provisos was not noticed, and the cases were decided on the ground of a separate and independent authority in the States to *punish offences against their own laws. In the other two cases, the acts of Congress contained no such savings, and yet the State courts were held to have jurisdiction under State laws. See also State v. Tuff, 2 Bailey S. C. R. 44.
I see no reason to believe that Congress really intended, by the act of 1864, to exclude the jurisdiction of State courts, under State laws, to punish the circulation of forged notes of National Banks. The act exhibits no jealousy or distrust of the State courts. On the contrary, that act amended the act of 1863, so as to give to the State courts concurrent jurisdiction with the Federal courts, of the important suits and proceedings which may, under that act, be instituted against National Banks, the jurisdiction of which was, by the act of 1863, confined to the Federal courts. And I presume that no good reason can be suggested, why a State court should be allowed to punish, under a law of the State, a cheat effected by means of a counterfeit coin, and not be allowed to punish, under a law of the State, a cheat effected by means of a forged National Bank note?
Upon the whole, I think that the objection of a want of jurisdiction in the court was properly overruled. I think, also, that there is no foundation for the other errors assigned in the petition, and that the judgment should be affirmed.
MONCURE, P., concurred in the opinion of Joynes, J.
Judgment affirmed.