## *Ex Parte* HOUGHTON.

*(District Court, D. Vermont.* June 14, 1881.)

1. CRIMINAL LAW — PASSING COUNTERFEITED NATIONAL BANK NOTES WITH KNOWLEDGE—STATE COURTS—FEDERAL COURTS—JURISDICTION.

A state court has no jurisdiction over the offence of passing counterfeited national bank notes with knowledge of their counterfeit character. Therefore, where one has been convicted of that offence by a state court, and sentenced to imprisonment, he will be discharged on motion in *habeas corpus* proceedings taken in this court.

*Habeas corpus* proceeding to release the relator, Houghton, who was convicted and sentenced by a state court to imprisonment upon an indictment for passing a counterfeit national bank note. The opinion states the case.

*Wm. G. Shaw,* for relator.

WHEELER, D. J. This is a motion by the relator for a discharge on *habeas corpus* from imprisonment in a prison of the state, under sentence of a court of the state for passing counterfeited national bank bills, on the ground that the state court had no jurisdiction over this offence, and that the imprisonment is contrary to the constitution and laws of the United States.

The constitution of the United States provides:

"Article 6. This constitution, and the laws of the United States which shall be made in pursuance thereof, * * * shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

Under this provision the limits of power between the United States and the several states are to be sought for in that constitution, and the laws of congress which have been made pursuant to it. It provides, (article 1, § 8:) "The congress shall have power * * * to coin money, regulate the value thereof, and of foreign coin; * * * to provide for the punishment of counterfeiting the securities and current coin of the United States." This provision extends to passing counterfeited coin and securities, as well as counterfeiting them. *U. S.* v. *Marigold,* 9 How. 570. It also provides (article 3, § 2) that "the judicial power shall extend to all cases in law and equity arising under this constitution, the laws of the United States, * * * and fifth amendment; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." It is well established that congress may exclude the jurisdiction of the courts of the states from offences within the power of congress to punish.

*Houston* v. *Moore,* 5 Wheat. 1; *The Moses Taylor,* 4 Wall. 411; *Martin* v. *Hunter,* 1 Wheat. 304; *Com.* v. *Fuller,* 8 Metc. (Mass.) 313; 1 Kent, Com. 399.

National banks are organized under the laws of the United States; their bills are issued to them by the treasury department of the United States, secured by bonds of the United States on deposit there, which fact is to be expressed on their face by the signatures of the treasurer and register, and the seal of the treasury of the United States. Rev. St. § 5172. They are securities of the United States which congress has power to protect by punishing counterfeiting them, and the passing of counterfeits of them, and are so declared to be in the laws of the United States. Rev. St. § 5413. Whether the state court had jurisdiction over this offence or not depends on whether congress has excluded that jurisdiction or left it to those courts under the laws of the states.

The judiciary act of 1789 provided, section 11,—

"That the circuit courts shall have * * * exclusive cognizance of all crimes and offences cognizable under the authority of the United States, except where this act otherwise provides, or the laws of the United States shall otherwise direct. * * *" 1 St. at Large, 78.

By the act of April 21, 1806, provision was made for punishing counterfeiting of the coin of the United States, and by that of February 24, 1807, for that of forging notes of the bank of the United States, and by that of March 3, 1825, for that of forging certificates of public stocks or other securities of the United States, counterfeiting coin of the United States and other countries, and passing counterfeit coin. Section 26 of the act of 1825 provides, as similar sections in each of the other acts had done, that nothing in this act contained shall be construed to deprive the courts of the individual states of jurisdiction under the laws of the several states over offences made punishable by this act. 4 St. at Large, 122.

This provision expressly left to the states jurisdiction of the particular offences mentioned in those acts, the same as if congress had never exercised its power to punish them.

A person was convicted under a statute of Ohio for passing counterfeit coin, and the conviction was upheld as not being contrary to the laws of the United States. *Fox* v. *Ohio,* 5 How. 410. So, under a statute of Vermont, (*State* v. *Randall,* 2 Aik. 89,) and a statute of Massachusetts, (*Com.* v. *Fuller,* 8 Metc. 313.) But upon demurrer to an indictment under the laws of New Hampshire for punishing perjury generally, for perjury committed in proceedings under

the bankrupt act of 1841, it was held that the state court had no jurisdiction over that offence. *State* v. *Pike,* 15 N. H. 83. In *Moore* v. *Illinois,* 14 How. 13, the respondent was convicted of harboring and secreting a negro slave contrary to the statute of Illinois. It was argued that the state court had no jurisdiction, because the laws of the United States provided for punishing obstructing the owner of a negro slave in endeavoring to reclaim him, and concealing the fugitive after notice; but the jurisdiction of the state was maintained on the ground that the offences were different.

The supreme court of Massachusetts took jurisdiction of an embezzlement of a private special deposit in a national bank by an employe of the bank, on the ground that congress had not provided for that particular offence. *Commonwealth* v. *Tenney,* 97 Mass. 50. The national bank acts were passed in 1863 and 1864, and provision was made for the punishment of counterfeiting their bills and passing the counterfeits, but there was no reservation to the state in making these provisions. Without such reservation the states had no power left to them to supplement the acts of congress by legislation covering the same ground. *Sturges* v. *Crowninshield,* 4 Wheat. 122; *Prigg* v. *Pennsylvania,* 16 Pet. 539.

The statute of Vermont, under which the relator was indicted and is imprisoned, was passed in 1869. At that time, and until the adoption of the Revised Statutes of the United States, June 22, 1874, there was nothing giving up to states the jurisdiction which congress had taken over this offence, or any part of it. The Revised Statutes contains the title of "Crimes," in which the provisions for punishing counterfeited national bank bills are placed. It also has this general provision:

"Sec. 5328. Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof."

The provisions of the judiciary act relating to the criminal jurisdiction of the circuit court are brought into section 629, twentieth, with the qualification of exclusive cognizance changed to "except where it is, or may be, otherwise provided by law." If these provisions were all, it might be said that congress had expressly withdrawn the jurisdiction before taken of offences mentioned in the title of "Crimes," so far as the states might choose to exercise similar jurisdiction through their courts. But chapter 12 of the title on "Judiciary," entitled "Provisions common to more than one court or judge," was placed in the Revision, and enacted as a part of the Revised Statutes. It commences with section 711:

"The jurisdiction vested in the courts of the United States, in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several States: *First.* Of all crimes and offences cognizable under the authority of the United States."

This provision was not in the statutes of the United States anywhere before. It was framed *ex industria,* and placed there for some purpose. It is not merely the provision of the judiciary act relating to the jurisdiction of the circuit courts brought forward and placed here, as well as in the chapter relating to those courts, to express the same thing again in another connection; but it is a different thing. That provision made the jurisdiction of the circuit courts exclusive of all other courts, federal as well as state, except as otherwise provided. This applies to all the courts of the United States, and expressly excludes, and seems to be made expressly to exclude, the jurisdiction of the courts of the states. Both provisions are necessary to place the jurisdiction in these cases where it is reposed, among the federal courts, and exclude that of the state courts, and the latter would be unnecessary if that of the state courts was not to be excluded.

The language of the section quoted from the title on "Crimes" does not save the jurisdiction of the courts of the states over the offences made punishable by that title, as section 26 of the act of 1825 saved it over offences made punishable by that act. It says nothing of offences, as such, to express or specify its application. There are many offences made punishable by that title,—some of them such as could never be offences against the laws of any of the states; some, such as the obstructing the executive officers in the performance of their duties, and the service of the processes of the courts of the United States, where the same act might constitute one offence against the laws of the United States, and another different offence against the laws of the states. This section of the title is general, and might be applicable to all these if taken in its broadest sense. It might be, or be claimed to be, that making any act punishable under the laws of congress would prevent the states from punishing a different offence involved in the same act. An assault upon a marshal, to obstruct his service of process, would be punishable under this title for the obstruction, but not assault. The assault might be punishable under the state laws, but not the obstruction. The title makes certain offences against the laws of the United States punishable. This section seems to mean that making them so punishable shall not prevent the states from taking hold of any offences which

may be involved that are contrary to the state laws, and not cognizable under the United States laws, and punishing them. And, taken in connection with the section making the jurisdiction of the United States courts over offences cognizable under the authority of the United States wholly exclusive of the state courts, it must mean this. Such construction leaves all the sections standing operative, while the other would leave the one declaring the jurisdiction exclusive inoperative. The section on "Crimes" is later than the other in the order of the statutes, and might be said to be controlling for that reason; but that ground of inference is expressly removed by the statutes themselves, which provide that no inference or presumption of a legislative construction is to be drawn by reason of the title under which any particular section is placed. Section 5600.

The act of passing these counterfeited bills, made punishable under the statute of the state under which the relator was indicted, might, and often would, concur with others to constitute a cheat which would be punishable by laws of the state of long standing against obtaining money or goods by privy or false tokens. Gen. St. Vt. 671, § 23.

It was upon this ground, that the passing the counterfeited national bank bill was a mere private cheat under the laws of Virginia, that the conviction was upheld by the majority of the court in *Jett* v. *Virginia*, 18 Gratt. 933, (Am. Law Reg. 260,) cited at this hearing.

The indictment against the relator does not charge him with passing a counterfeited national bank bill, knowing the same to be false, with intent to defraud one Margaret McDaniels, which is, in terms, a somewhat different offence from that made punishable by the laws of the United States, which consists merely in passing such counterfeited bill, knowing it to be counterfeited. Rev. St. § 5415. The indictment appears to have been drawn according to the statute in force before the act of 1869, which made an intention to defraud an ingredient of the offence, but did, in exact language, apply to the national banks. Gen. St. Vt. 678, § 3. But this section of the General Statutes was expressly superseded by the act of 1869, and the element of an intent to defraud was left out, so that the offence made punishable by the laws of Vermont was the passing such counterfeit bill, knowing it to be counterfeited,—precisely the same offence made punishable by the laws of the United States. The material allegations of an indictment are those which set forth the charges which are contrary to the law and make up the offence, and not those which charge things not contrary to the law, however morally wrong they

may be, and which are not necessary to constitute the offence. A plea of not guilty to this indictment would only put in issue the passing the counterfeit bill knowing it to be such, and the plea of guilty only confessed as much. The relator, therefore, stands convicted in the state court of precisely an offence cognizable under the authority of the United States, and is restrained of his liberty under that conviction.

There are respectable opinions and weighty authorities which hold that in the United States there are two governments,—the United States, within the sphere marked out by the constitution, and the several states,—and that the same act may be an offence, and some of' them that it may be the same offence, against each, for which punishment may be inflicted by each, and that the safety of the accused from excessive punishment under the two systems lies in the pardoning power, and in the benignant spirit with which the laws of each are administered. *United States* v. *Wells,* 7 Am. Law Reg. 424; Mr. Justice Daniell in *Fox* v. *Ohio,* 5 How. 410; Mr. Justice Johnson in *Houston* v. *Moore,* 5 Wheat. 1.

That the same act, constituting different criminal offences, may be punished for one under the United States and for another under the state, cannot, under the authorities before cited, well be doubted, and most of the examples cited to show that the same offence may be punished by both, are examples of that class. That the states cannot make criminal offences out of what the United States makes lawful, nor against the laws of the United States, was well settled in *Prigg* v. *Pennsylvania,* 16 Pet. 539; *The Moses Taylor,* 4 Wall. 411; and other cases before cited. The provision in the constitution prohibiting putting twice in jeopardy for the same offence was for the protection of the people from oppression. *Houston* v. *Moore,* 5 Wheat. 1. It may be said that this only applied to the tribunals of the United States; but if so, it is a restraint of the courts under the laws of congress. Under it congress could not make the same offence punishable twice. And if congress could not do this directly, it could not indirectly, by creating an offence and leaving the state to punish it once, and providing by its own laws to punish it again.

This offence appears to be one over which the state court had no jurisdiction, and the relator is restrained of his liberty without warrant of law. The next question is whether he can be relieved in this mode.

In 1867 the writ of *habeas corpus* from the courts and judges of the United States was extended to persons in custody, in violation of the

constitution, or of a law or treaty of the United States. Rev. St. 753. The law of the United States was, and is, that the relator should be tried by the courts of the United States, and not by those of the state, and if guilty that he should be punished according to the laws of the United States, and not under those of the state under which he is in custody. This court has jurisdiction of the relator under these provisions by this writ.

The inquiry into the cause of his confinement is not a review of the proceedings of the state court. If the attention of that court had been called to this aspect of the case, probably this proceeding would have been wholly unnecessary; but the record shows that it was not. The point here is not at all that the relator was not proceeded with in a proper manner by the state court, but that the court had no jurisdiction over him for this offence. In such cases the remedy may be by *habeas corpus*. *Ex parte Lange*, 18 Wall. 163.

*Brown* v. *U. S.* 14 Am. Law Reg. 566, before *Erskine*, J., and afterwards before Mr. Justice Bradley, is an authority that section 711 gives exclusive jurisdiction to the courts of the United States over offences cognizable under the authority of the United States, and that *habeas corpus* from a federal court or judge is a proper remedy.

This is not a proceeding for relieving criminals at all from just punishment. It is intended to relieve persons from punishment contrary to the laws of the United States, but not from liability to be punished according to those laws. If the relator was still liable to punishment according to those laws, he would be held by order of court until the district attorney could proceed against him; but the offence for which he has already suffered considerable punishment is now apparently barred by the statute of limitations of the United States. Therefore, further detention would be unavailing.

The relator is discharged from this imprisonment.