BOUEDIN, J.,
delivered the opinion of the court.
The plaintiff in error was indicted at the March term of the Hustings court of the city of Eichmond for forging a public record, then being in the office of the second auditor of this state. On his arraignment he demurred to the indictment; but his demurrer was overruled by the court, and he was put on his trial, was found guilty by the jury, and his term of imprisonment in the penitentiary was fixed at four years. In the progress of the trial sundry bills of exception were taken by the accused to rulings of the court, and the bills were signed and sealed by the court, and made a part of the record. After the verdict of the jury was rendered, the accused moved the court to set the same aside as contrary to the law and the evidence, and also moved in arrest of judgment; both of which motions were overruled by the court without exception, and judgment was entered according to the verdict. On a subsequent day the accused moved the court to set the judgment and verdict aside, and award him a *new trial, on the ground that Joseph Mayo, Jr., a material witness for the commonwealth to prove the alleged forgery was then insane; that he was insane at the time he testified, and had been insane for some time prior to the trial. Affidavits of the prisoner and of one of his counsel were filed, showing that they had no suspicion of the insanity of the witness during the trial, but had ascertained the fact after the case was ended. Much testimony was taken on the motion on both sides, but after fully considering the same, the motion was overruled by the court, and the prisoner again excepted. The testimony offered on this motion, and the reasons of the court for overruling it, are fully set forth in the bill of exceptions.
A writ of error was awarded by this court to the judgment of the Hustings court, on which the case is now before us.
We shall consider the errors relied on in the order in which they have been presented at the bar. The first error assigned is the refusal of the court to set aside the judgment and verdict on account of the alleged insanity of the witness, Joseph Mayo, Jr.
There can be no doubt, that the rule laid down by Peake in his work on Evidence, and approved by the Court of Errors of New York in the case of Hartford v. Palmer, 16 John. R. 143, is sound and reasonable, and is one, as said by the court in that case, “which cannot fail to command the respect of all mankind” ; to wit, “that all persons who are examined as witnesses must be fully possessed of their understanding ; that is, such understanding as enables them to retain in memory the events of which they have been witnesses, and gives them a knowledge of right and wrong ; that, therefore, idiots and lunatics, whilst under the influence of their ■ malady, not possessing their share of understanding, are excluded. ’ ’
*It will be seen then, that a witness is not excluded by this rule, merely because he is a lunatic. That is not enough per se to exclude him; but he must at the time of his examination be so under the influence of his malady as to be deprived of that “share of understanding” which is necessary to enable him to retain in mem- *590 ofy the events of which he has been witness, and gives him a knowledge of right and wrong. ” If at the time of his examination he has this share of understanding, he is competent. That is the test of competency, and' of such competency the court is the judge; whilst the weight of testimony — the credit to be attached to it — is left to the jury.
Mr. Wharton, in his work on Criminal Raw, says, “It was once held that an idiot was inadmissible, and so of a lunatic. It is now settled, however, that in all cases, either an idiot or lunatic may be received, if, in the discretion of the court, he appears to have sufficient understanding to apprehend the obligation of an oath, and to be able to give a correct answer to the questions put. The competency is to be determined by the judge trying the case, upon the examination of the witness himself, or upon the testimony of third persons.”. 1 Wharton’s Crim. Raw, (j 752, and cases cited.
In the case of the Queen v. Hill, 20 Law Journal, N. S., p. 22, (reported also in 5 Eng. Raw & Eq. R. 547) it was held by all the judges, Rd. Campbell, C. J., presiding, that the mere fact of insanity is not enough per se to exclude a witness. The judges were all of opinion, that if at the time of his examination, he appeared to the judge to be of sufficient intelligence to distinguish between right and wrong — to appreciate the nature and obligation of an oath — then he was admissible; all beyond was matter affecting the weight of *his testimony and his credit as a witness, and was therefore matter for the consideration of the jury. . “If,” as Coleridge, J. says, ibid, p. 26, “his evidence had in the course of the trial, been so tainted with insanity as to be unworthy of credit, it was the proper function of the jury to disregard it, and not to act upon it.”
We think the principle of law in such cases, as above laid down, furnishes a sound and reasonable rule. The question then before this court is not whether the witness, Joseph Mayo, Jr., was or was not a lunatic; whether on two occasions, shortly before his examination, he was not for a few days decidedly insane; whether a few days after his examination he was not in the same condition; or whether at the time of the motion he was not, and is not still, a lunatic ; all of which we incline to believe has been established by the proofs and admissions of counsel, before this court in argument. This we say however is not the question before this court; for, as was said by Judge Story, speaking for all the judges of the United States Supreme court in the case of Evans v. Hettick, 5 Wheat. R. 470, “a person being subject to fits of derangement is no objection either to his competency or credibility if he is sane at the time of his giving his testimony.” The real question before us is, whether on Monday and Tuesday, the 23d and 24th of March 1874, when, as a witness in this cause, he was subjected to a protracted and searching examination and . cross-examination, without objection to his competency from an3’i quarter, Joseph Mayo, Jr., possessed a sufficient share of understanding to appreciate the nature and obligation of an oath; to distinguish between right and wrong; to remember events, of which he had been a witness; and to answer intelligently the questions propounded to him. If he then possessed that degree of fintelli-gence, we think he was competent. The learned judge who presided at the trial, and whose peculiar province it was to decide that question, was of opinion that he did possess the requisite share of understanding ; and it would require very cogent and conclusive proof to the contrary to induce this court to interpose under such circumstances. But we see no error in the ruling of Judge Guigon on the motion. With all the testimony before us, we fully concur with him in the opinion that there was nothing in the testimony to justify the exclusion of the witness, even had the motion been made before his examination. But there was no such motion; and in deciding this question we have the benefit of an actual examination of Col. Mayo as a witness on two successive days — the whole examination relating to complicated transactions of a delicate and painful character; yet during that protracted examination nothing occurred which excited even a suspicion of insanity in the mind of the plaintiff in error, or of his learned and astute counsel; although they did think that he was under the influence of stimulants; nor upon a close and critical review of his testimony, since it was given, have they been able to point the court to anything in it evincing delusion or inconsistency, any want of intelligence, or even want of memory. Whilst on the other hand Judge Guigon certifies, that although evidently drinking deeply, he was at the time of his examination “a competent and proper witness, and not laboring under any mental disability whatever;” that his mind was perfectly clear, his appreciation of the interrogatories perfect, his answers clear and intelligent, and framed in language unusually accurate and succinct, giving a better and clearer idea of the complicated transactions as to which he deposed than any other witness in the. case. ’ ’ The ^testimony of the commonwealth’s attorney, and of the five jurors, who, among others, were examined, was substantially to the same effect. This testimony all applied to Mayo’s state of mind on the two days on which he was examined as a witness, being the precise time at which, in the opinion of this court, it was material to ascertain the state of hfs mind; and there is, in our opinion, nothing in the record to counteract it, or to weaken its force. We are of opinion therefore that the motion was properly overruled.
The next error assigned is, that the court erred in overruling the demurrer to the indictment; that it was not sufficient to charge that the defendant > forged a public record, describing it so as plainly to iden *591 tify the record charged to have been forged; but that it was further incumbent on the commonwealth to state all the facts necessary to show that the document alleged to be a public record, was in point of fact such record.
Were such strictness now required, it might well be held that it is met by the terms of the indictment. The document forged is charged to be a public record remaining in a public office, the office of the second auditor, judicially known to be a public officer; the record being the warrant book of the sinking fund, a fund judicially known to be a public fund, the sole property of the state; the entry on that book alleged to have been forged, being set out totidem verbis, and showing on its face that it is an entry of a public nature, and affecting the public interest. Did the law now require the strictness of allegation contended for by the counsel for the plaintiff in error, we should be strongly inclined to hold that his demands were fully met by the terms of the indictment. But the minuteness and particularity formerly required in indictments *for forgery are now dispensed with by express statute. All that is now required is, that the document alleged to have been forged shall be described “in such manner as would sustain an indictment for stealing such instrument or other thing, supposing it to be the subject of larceny and we think there cannot be a doubt that the description given in this indictment of the public record alleged to have been forged, would be amply sufficient to identify the same in an indictment for the larceny thereof.
The demurrer was, therefore, properly overruled.
3. The next objection is to the refusal of the court to arrest the argument before the jury until the counsel of the plaintiff in error should prepare their bill of exceptions in relation to the instructions given and refused by the court.
We see no error in this proceeding. It was apparent that the preparation of the bill would consume much time; and as the trial had already been a protracted one, it was deemed best by the court to consider the points as saved, to go on with the case before the jury; and when the argument should be concluded, to prepare the bill of exceptions with due care and deliberation. The question thus presented is one of practice merely, and must of necessity be left largely to the discretion of the court of trial, to be exercised according to the circumstances of the particular case. In the present case we do not see that this discretion was erroneously exercised. The length of time actually consumed in the preparation of the bill shows, we think, the propriety of the course pursued by the court. The practice itself is a very common one in such cases, and we think is commended by convenience. No wrong or inconvenience to the plaintiff in error has been shown to have resulted from it; and ^whilst no unbending rule is intended to be laid down, nor can with propriety be laid down, in such cases, we are all of opinion that in this case there was no error in the proceeding.
The next error assigned is that the Hustings court erred in giving, modifj'ing and refusing the instructions to the jury, as set forth in the first bill of exceptions.
The instructions are all connected with and run into each other, and we will consider them as a whole.
They declare in what consists the forgery of a public record; that the warrant book of the sinking fund is such public record; and that it is of itself evidence of what it contains, to be considered with the other evidence in the case.
These are the material propositions affirmed in the instructions given by the court. Several instructions relating to the powers and duties of the second auditor and his relation to the existing sinking fund were asked for and refused, as shown by the exception. The principle involved in this refusal, however, is so connected with the main propositions of law announced by the court, that we propose to consider them, as they have been considered at the bar, very much together.
The chief objection to the instructions is that they affirm that the warrant book of the sinking fund is a public record, the subject of forgery as such; and is evidence per se of what it contains.
The counsel for the plaintiff in error insist, on the other hand, that it is not such a record; is not the subject of forgery as such; and is not per se evidence of what it contains, and it was error therefore so to declare.
They do not deny that a public record is the subject of forgery under the terms of our statute.
*What then is a public record?
Mr. Bouvier, tells us in his haw Dictionary, 2 vol., p. 429, that it is “a written memorial made by a public officer authorized by law to perform that function, and intended to serve as evidence of something written, said or done.” It must be “a written memorial,” must be made by “a public officer,” and that officer must be “authorized by law” (not required) to make it. These elements must, at the least, combine, to make the record a public record. Do they exist in this case? Before proceeding to answer that question, it may be well to consider a little further the nature of a public record, and the power of a public officer to make it. He must have authority to make it; but that authority need not be derived from express statutory enactment. Whenever a written record of the transactions of a public officer in his office, is a convenient and appropriate mode of discharging the duties of his office, it is not only his right but his duty to keep that memorial, whether expressly required so to do or not; and when kept it becomes a public document — a public record belonging to the office and not the officer; is the prop *592 erty of the state and not of the citizen, and is in no sense a private memorandum.
Among the writing's classed by Mr. Greenleaf as public writings, and evidence per se, are “books kept by persons in public office, in which they are required, whether by statute, or the nature of their office, to write down particular transactions occurring in the course of their public duties and under their personal observation.” 1 Greenleaf’s Ev., I 483. And at page 610, § 496, the same author says: 1 ‘To entitle a book to the character of an official register, it is not necessary that it be required by an express statute' to be kept, nor that the nature of the office should render the *book indispensable. It is sufficient that it be directed by the proper authority to be kept, and that it be kept according to such directions. ’ ’ All such books are recognized as public records, not merely because they are required by law to be kept, but “because the entries in them are of public interest and notoriety, and because they are made under the sanction of an oath of office, or at least under that of official duty. ’ ’ 1 Greenleaf, l 484. And in the same section the author cites, as books of this description, the following among others: “the books of the Bank of England, which contain the transfers of public stock, the transfer books of the East India Company, the books of the post, office and custom house, and registers of other public offices. ’ ’
With these principles in view, let us en-quire what is the character of the warrant book of the sinking fund and'of the entries made therein.
The book itself has been inspected by the court. It is marked on the back, where the name of a book is usually printed, “Sinking fund. ’ ’ On the outside of the first lid it is marked “Warrant book, Sinking Eund,” and at the head of the first page is written, “Sinking Eund.” The sinking fund is judicially known to the court, as we have already seen, to be a public fund owned wholly by the state, and managed wholly by public officers of the state; and the marks aforesaid upon the book in question would, if standing alone, tend strongly to show its public character. It was kept in the office of the second auditor, one of the most important public offices in the state, and one of the managers of the fund, bj- a clerk in that office, and by the direction of the second auditor himself. The entries, on their face, show the character of the book. They are headed “Sinking Eund;” and on one *page the fund is •debited with moneys received into the treasury for the fund; and on the other is credited by the warrants of the second auditor on the treasurer for amounts paid for state bonds purchased for the sinking fund. These warrants were issued as follows: an order purporting to be issued by the board of commissioners of the sinking fund, authorizing and requesting the second auditor to issue his warrant on the treasury, payable out of the sinking fund, for a given sum, the purchase money of a certain amount of state bonds, certified and signed by the plaintiff in error, as secretary of the board, would be carried to the clerk in the second auditor’s office who kept the warrant book aforesaid. This clerk would then make the entry in the warrant book, and file away the order, fill a warrant on the treasurer in the name and in favor of the seller of the bonds, for the amount of the purchase money, which would be signed by the second auditor; and on the back of this warrant the treasurer drew his check on a bank for the amount. The entries of the transaction on the warrant book showed the number of the warrant, the person, or persons in whose favor it was drawn, the face value of the bonds for the purchase of which it was payment, and the exact amount paid; and the second auditor proves that he kept that book as a record of the amount of bonds purchased by the sinking fund, and as a record of the receipts and disbursements of his. office as to the sinking fund, as required by g 22 of ch. 42, Code of 1873. If a record thus kept by such public officers, and relating to matters of such grave public interest, be not a public record, then it is difficult to conceive what does or can constitute a public record. But it is argued that the section to which the second auditor referred as his authority to keep this record, is repealed, *and that he has no authority whatever in the premises ; therefore the record kept is not a public record.
• Were the repeal conceded, we are by no means prepared to concede that the supposed result would follow. There can be no doubt that the second auditor under the general law, is bound to keep a record of the public transactions of his office; and it is clear, whether under a mistaken sense of public duty or not, that the transactions recorded in the warrant book aforesaid did in fact take place in his office; that it was to the interest of the public that they should be recorded; that they were in fact recorded, and as a necessary consequence the record was public. The state had a right to the record, and this was the only one kept.
But the court is of opinion that the section aforesaid is not repealed, and the auditor was, in the strict line of official dutj', both in acting as he did and in recording his acts.
It is not pretended that the section referred to is anywhere repealed by express enactment. If then it be repealed at all, it must be by implication merely, by the passage of some act covering the same ground and in conflict with it. No such act has been pointed out, nor can be, for none such exists. It is true that the act of March 30th, 1871, known as the funding act, created a new sinking fund in conflict with that formerly existing, and thereby by implication repealed the same, and that a different board of commissioners was established to manage it, but the number and name of the board was the same in both cases, and the second auditor was a member of both boards. *593 There was no change whatever made in the details of management, no new or different system provided, and it is but reasonable to suppose, as indeed is the conclusion *of law, that it was the wish and design of the legislature to preserve the then existing system, so far as applicable to the subject. And we are fortified in this view by the fact, known to us judicially, that the second auditor, who, as we have seen, was a member of both boards, has, since the creation of the new sinking fund, continued to keep in his office the record of his transactions, in relation to the sinking fund, under the 22d section of ch. 42, Code of 1873, precisely as he did before the new sinking fund was established, and has annually reported the same to the legislature as a portion of the transactions of his office, without any intimation to him on the part of that body that he was usurping authority, or any amendment or repeal of the law under which he was acting.
We are of opinion therefore that the twenty-second section of chapter 42 of the Code of 1873, is not repealed, but is still in force; and that the same was properly referred to by the second auditor as an authority for his action in relation to the sinking fund. That section not only authorizes but requires the second auditor to keep an account of the transactions of the sinking fund with the treasury, and also to report the same to each session of the legislature.” The warrant book aforesaid of the sinking fund is the only record kept of those transactions, and we are therefore further of opinion, as we have already said that the book thus kept is a public record, is evidence per se of what it contains, and that there was no error in giving and refusing the instructions as set forth in the first bill of exceptions.
This disposes of the point saved in the third bill of exceptions also. The counsel for the accused was arguing to the jury on a mistaken view of the meaning of the addition made by the court to the fourth instruction. *The court referring to the warrant book aforesaid, added to the fourth instruction as follows : ■ ‘But such book is of itself evidence to be considerep ~by the jury in connection with other evidence.” The counsel was contending that the court meant to say that the book was before the jury like a letter, to be referred to by witnesses to refresh their memory, but that, standing alone, it was not evidence to prove the number of bonds for which warrants had issued. The court interrupted the counsel and said to the jury that the warrant book was not like a letter, to be referred to only to refresh the memory ■of witnesses; but was admitted as evidence per se of that which it contains; and to this •opinion the accused excepted. We have already seen that the warrant book, in the opinion of this court, is a public record, and evidence of itself of what it contains ; that the instruction as given was proper; and, of course, there was no error in correcting the counsel.
We have thus noticed and disposed of all the errors relied on by counsel, and are of opinion that there is no error in the record. The judgment of the Hustings court must therefore be affirmed.
Judgment affirmed.
FORGERY AND COUNTERFEITING.
I. Definitions.
JI. Subjects of Forgery.
ITT. Uttering- and Publishing With Knowledge That the Instrument Is a Forgery.
IV. Jurisdiction.
V. Indictment and Procedure.
VI. Evidence.
VII. Punishment.
VITI. On Appeal.
I. DEFINITIONS.
Forgery. — "Forgery is the fraudulent making of a false writing, which if genuine, would be apparently oflegal efficacy. Bishop on Criminal Law (3d Ed.), sections 495 and 499.” This was the definition by Fauntleroy, J., in Terry v. Commonwealth, 87 Va. 673, 13 S. E. Rep. 104.
Counterfeiting. — Counterfeiting is distinguished from forgery in only one particular; in counterfeiting there must be a resemblance to the coin or other instrument counterfeited, while in forgery no such resemblance is requisite. May’s Or. L. § 94, 7 Am. & Eng. Enc. Law (2d Ed.) 876.
II. SUBJECTS OF FORGERY.
Power of Attorney to Recover Money. — In Commonwealth v. Proctor, 1 Va. Cas. 4, it was held that the forgery of a power of attorney to recover money for military services, is not a crime within the “act against forgery,” passed Nov. 25, 1789, c. 19.
Ball Bond — Validity of Instrument. — A bail bond taken by a sheriff which has been altered in a material part, may be the snbj ect of a prosecution for forgery, although some doubts may be raised respecting the validity of the bond, arising from the recitals in the condition. Commonwealth v. Linton, 2 Va. Cas. 476.
Bank Notes. — In Commonwealth v. Hensley, 2 Va. Cas. 149. it was held that the false uttering of a forged bank note of another state or district, may be prosecuted as the false uttering of a “promissory note for the payment of money,'’ under the statute of Dec. 8, 1794.
Suit on Forged Note — Knowledge of Counsel — The bringing of a suit at law, as counsel, upon a forged note, and recovering judgment thereon, with the knowledge that the note was a forgery, is held to be an attempt to employ the said note as true, and an uttering thereof, within the meaning of the statute. Chahoon v. Commonwealth, 20 Gratt. 733; Sands v. Commonwealth, 20 Gratt. 800.
Negotiable Instruments — Indorsement.—In Powell v. Commonwealth, 11 Gratt. 822, the maker of a negotiable note, having endorsed the name of a third person on the back thereof, passed it to the payee. Held, this constitutes the offence of forgery.
Unindorsed by Payee. — in Hendrick v. Commonwealth, 5 Leigh 707, it was held that in a prosecution for the uttering of a false or counterfeit note payable to order, it is immaterial that the note was not indorsed by the payee.
*594 Letters. — indictment for forging, with intent to defraud W. & W., a letter in the following terms: "Nottoway, April 34, 1841. Gent., Agreeable to Mr. Wm. I. Watkins’ request, I take pleasure in making you acquainted with his name, and would say to you that he is very extensively engaged in the manufacturing of tobacco, and has made some large purchases, and says that he wishes to patronize you (on my recommendation). You may be assured that whatever he engages to do he will certainly perform. He says it is probable he will want $1,000 by the 1st of May, to meet his engagements, and if he apply for the amount, I have no doubt but you will accommodate him. The roads are in such a condition that it is impossible to get any produce to market. Write me a few lines by Mr. Watkins, and say what the chance is for a rise in tobacco. Your compliance with the above will very much oblige your obedient servant, Joseph M. Foulkes. — P. S. Mr. Watkins prefers giving a negotiable note payable in Petersburg Exchange bank, where he can always have- an opportunity to send at the shortest notice and draw. He is not a gentleman of a low mean degree, but one that is a perfect gentleman in every sense of the term. I am confident, as I have observed to him, that you will either let him have the money, or endorse for him. J. M. F.” Held, this is not a writing in respect whereof forgery can be committed, either at common law or under the statute. Foulkes v. The Commonwealth, 2 Rob. 837.
III. UTTERING AND PUBLISHING WITH KNOWLEDGE THAT THE INSTRUMENT IS A FORGERY.
To convict a prisoner of uttering, or attempting to employ as true, a forged writing, it must be shown that the accused, himself, uttered or attempted to employ as true the said forged writing, or was present at the time such forged writing was uttered or attempted to be employed as true, by some other person, aiding and assisting such person to utter or employ the same as true; and it must be further shown that the accused knew at the time that the said writing was in fact forged; and that such uttering or attempting to employ as true, was made or done by him with the intent to defraud. But any assertion or declaration, by word or act, directly or indirectly, that the forged writing is good, with such knowledge and intent, is an uttering or attempting, to employ as true the said writing; provided that such assertion or declaration was made in the prosecution of the purpose of obtaining the money mentioned in the said writing. Sands v. Com., 20 Gratt. 801; Chahoon v. Commonwealth, 20 Gratt. 733.
Proof of Scienter. — in a prosecution for passing a forged note, knowing it to be forged, evidence that the prisoner endeavored to engage a person to procure for him counterfeit money, that he enquired whether he had brought him any, and of declarations that he intended to cultivate the acquaintance of a counterfeiter and intended to remove to a place near his residence, etc., is admissible as tending to prove the scienter. Finn v. The Commonwealth, 5 Rand. 701.
On the trial of an indictment for passing a counterfeit bank note or check, after evidence that the prisoner passed the note, and that it was counterfeit, evidence that the prisoner had in his possession and attempted to pass other counterfeit notes of the same kind to other persons, the day after he passed those in the indictment mentioned, is admissible to prove the scienter. Hendrick v. The Commonwealth, 5 Leigh 707.
Indictment for passing a counterfeit note charges that the prisoner, on a particular day, at the county of M. and within the jurisdiction of the court, being possessed of the note, feloniously did pass the same, well knowing it to be counterfeit at the time he passed it. Held, the time and place of passing the note, and of the scienter, are set forth with sufficient certainty. Buckland v. Commonwealth, 8 Leigh 732.
Upon the trial of an indictment for passing counterfeit bank notes, proof that prisoner had, about the same time, passed another note of that kind, which was thought to be a counterfeit and which he took back, though this note is not produced at the trial, is admissible evidence to prove the scienter. So upon the trial of an indictment against M. for passing counterfeit banknotes, the prisoner appears clearly to have been confederated with one L. in passing counterfeit notes, and present when L. passed such notes; the notes so passed by L. are produced in evidence against the prisoner. Held, they are proper evidence. Martin v. The Commonwealth, 2 Leigh 745; Hendrick v. Commonwealth, 5 Leigh 707.
Uttering Counterfeit Coin — Proof of Scienter. — In a prosecution for uttering counterfeit coin, the guilty knowledge of the prisoner that the coin was counterfeit is a fact to be proved; and there can be no presumption of law, from the existence of other facts, of this guilty knowledge, though there may be a presumption of fact. Wash v. The Commonwealth, 16 Gratt. 530.
Uttering Forged Instrument — Proof of Foreign Corporation. — On a prosecution for uttering and attempting to employ as true a forged note purporting to be the note of the Bank of Delaware in Pennsylvania, a banking company authorized by the laws of Pennsylvania, the existence of such a bank may be proved by parol evidence. The averment that it was authorized by the laws of Pennsylvania is surplusage, and need notv be proved. Cady v. The Commonwealth, 10 Gratt. 776.
Uttering Forged Instruments — Records as Evidence.— In Sands v. Commonwealth, 20 Gratt. 800, C had forged a note, and employed the prisoner, an attorney, to bring suit thereon, which he did and recovered judgment. Held, that in the prosecution of the attorney for uttering the forged note, the records of the civil suit, and the testimony of the clerks of the court are admissible evidence to show the complicity of the prisoner in the uttering of the forged paper.
Uttering Counterfeit Notes of the U. S. Bank. — It is felony under the statute 1 Rev. Code, ch. 154, § 1, to pass a counterfeit note of the bank of the United States, dated at a time when that bank was in existence, though, at the time of passing the note, the charter of the bank had expired. Buckland v. Commonwealth, 8 Leigh 732.
Uttering Counterfeit Bank Notes — Proof of Non-Genuineness. — In a criminal prosecution for passing counterfeit bank notes, it is not necessary to prove the notes to be counterfeit by an officer of the bank of which the notes are counterfeited. Martin v. Commonwealth, 3 Leigh 745.
IV. JURISDICTION.
Jurisdiction of State Courts. — A state has jurisdiction to punish an act made an offence by the laws of the state, though the same act is made an offence by a law of the congress of the United State.s. Ac *595 cordingly a state court has jurisdiction to punish the offence of attemping- to pass a forged note purporting to be a note of one of the national banks of the United States. Jett v. Commonwealth, 18 Gratt. 933.
Jurisdiction — Indictment—Counts.—A person examined in a county court on a charge oi forging an order, and committed by that court for trial in circuit superior court for the forgery only, cannot be tried there for uttering andpudUsMnafh.eor0.er; therefore, if the indictment against the prisoner contains counts for the forgery, and counts for uttering and publishing, the circuit superior court ought to quash these latter counts. The rule of practice in criminal cases, that if an indictment contain several counts» some good and others faulty, and a general verdict of guilty be found, the bad counts will not affect the validity of the good, and judgment will be given on those which are good, — is not applicable to cases of penitentiary crimes in Virginia, where the jury is to ascertain the term of imprisonment, since the evidence on the bad counts may aggravate the punishment imposed by the verdict. Mowbray v. The Commonwealth, 11 Leigh 643.
Venue — Evidence—Inferences of Jury. --’If on the trial of a prisoner in a certain county for the forgery of a certain writing alleged to have been committed in that county, it be proved that the said writing was found in the possession of the prisoner in the said county where he had uttered or attempted to 1 utter the same as true, and there be no evidence to show that the forgery of said writing was committed in any other county, the jury from these facts may infer that the forgery of said writing was committed in that county. State v. Poindexter, 23 W. Va. 805.
V. INDICTMENT AND PROCEDURE.
Preliminary-Proceedings — Examination—Sufficiency. — A prisoner is committed for examination, is examined, and remanded by the examining court for trial, for felony in forging and uttering a promissory note purporting to be drawn by A. D. (no intention to defraud A. D. or any other person being charged). Held, the examination is sufficient, and well warrants an indictment for forging and uttering the note with intention to defraud A. 1). Bogart v. Commonwealth, 10 Leigh 693.
Indictment — Where Prisoner Remanded to Superior Court. — If an examining court remand to the superior court for trial, a prisoner charged with forgery, the prisoner may be indicted in the superior court, not only for the forgery, but also for procuring the instrument to be forged, and for acting and assisting in the forgery. Huffman v. The Commonwealth, 6 Rand. 685.
Indictment — What It Should Set Out. — An indictment for uttering, and attempting to employ as true, a forged writing, need not set out the whole writing, but it is sufficient to give its purport and effect. State v. Henderson. 29 W. Va. 147, 1 S. E. Rep. 225.
Indictment — Sufficiency of Allegations. — The form of indictment for forgery and uttering forged instruments, found in Mayo’s Guide (Ed. 1860). p. 537, is good as to both counts. Neither in an indictment for uttering or attempting to employ as true a forged instrument, nor one for forgery, is it necessary to name the person intended to be defrauded, as section 8. c. 158, Code 1887, dispenses with that in both such cases. It is not necessary in such indictment to allege that the act was to the prejudice of another’s right, but it must appear from the description of the writing in the indictment that it is such as might prejudice his right. State v. Tingler, 32 W. Va. 546, 9 S. E. Rep. 935.
An indictment which charges a prisoner with the offences of falsely making, forging and counterfeiting; of causing and procuring to be falsely made, forged and counterfeited, and of willingly acting and assisting in the said false making, forging and counterfeiting, is a good indictment, though all of these charges are contained in a single count; the words of the statute being pursued, and there being a general verdict of guilty, judgment ought not to be arrested on the ground that the offences are distinct. Rasnick v. Commonwealth, 2 Va. Cas. 356.
Upon an indictment for passing a counterfeit note of the bank of Louisville, without alleging that the bank is a chartered bank, or that there is no such bank, and without alleging that the note was passed “to the prejudice of another’s right,” or “for the prisoner’s own benefi t, or for the benefit of another, ’ ’ held, the offence so charged is a felony within the meaning of the statute. 1 Rev. Code. ch. 154. § 4, and the indictment is good and sufficient. Murry v. The Commonwealth, 5 Leigh 720.
It is not necessary to set forth in the count, the persons whom the prisoner procured to forge the instrument, or with whom he acted and assisted in the forgery. A general description, in the words of the statute, is sufficient. An indictment which, charges that the prisoner caused and procured a certain instrument to be forged, and willingly assisted in the forgery, etc., is to be understood as charging that he caused it to be done in his presence, and that he aided, being present', in other words, as charging him as principal in the second degree, and not as accessary. See Rasnick’s Case, 2 Va. Cas. 356; Huffman v. The Commonwealth, 6 Rand. 685.
Indictment for Counterfeiting — Sufficiency.—An indictment on the statute of 1834-5, ch. 66, charging that the prisoner did knowingly have in his custody, without lawful authority or excuse, “one die or instrwnent'' for the purpose of producing and impressing the stamp and similitude of the current silver coin called a half dollar (no further describing the die or instrument) is insufficient. Commonwealth v. Scott, 1 Rob. 695.
Indictment — Possession of Counterfeit Coin. — a prisoner is examined for forging and counterfeiting twenty-four pieces of silver coin, and is sent on to the circuit court for further trial. He cannot be indicted for feloniously having in his possession ten or more pieces of coin, with intent to alter and employ the same as true. An indictment under the statute, Code, ch. 193, § 6, p. 733, for feloniously having in his possession more than ten pieces of forged or base coin, must allege that the prisoner had them in his possession at the same time; and the charge that on a certain day he had them in his possession, is not sufficient. There are counts in an indictment for forging and counterfeiting coin, and also a count for feloniously having in his possession twenty pieces of forged coin, not saying, “at the same time.” The prisoner having moved the court to quash the last count, which is overruled, there is verdict and judgment against him, and he obtains a writ of error. This court holding that the count is bad as an indictment for a felony, will not permit it to stand as a count for a misdemeanor, but will reverse the judgment and quash the count. Scott v. Commonwealth. 14 Gratt. 687.
indictment — Allegation of Time of Offence. — The time | when the offence is alleged in the indictment to have *596 ■been committed, being stated in figures, is no error. Cady y. The Commonwealth, 10 Gratt. 776.
Indictment — Description of Instrument. — An indictment charges the forgery of an endorsement on a negotiable note, which is described as to the amount, date, to whom payable and when due; but the indictment does not state who is the maker of the note or where it is payable. Held, it is a good indictment. Cocke v. The Commonwealth, 13 Gratt. 750.
Indictment-Failure to Allege the Swearing of the Grand Jury. — in a bill of indictment with three counts,' if’in the third count it is omitted to be stated that the grand jury “on their oath” present, (the first two counts being regular in that respect) the objection is obviated by the fact that the record states that the grand jury were sworn in open court. Huffman v. The Commonwealth, 6 Rand. 685.
Indictment — Description of Offence. — The words “to the prejudice of another’s right,” in the Code, ch. 193, § 5, p. 733, in relation to forgeries, are descriptive not of the offence, but of the writings of which forgery may be committed; and it is not therefore necessary that they shall be inserted in the indictment in describing the offence charged. The description of the writing in the indictment, as the endorsement of a person whose name is forged, will not vitiate the indictment, though the simulated liability might not be that of a technical endorser, but of a different character. Powell v. The Commonwealth, 11 Gratt. 822.
Indictment — Variance—Endorsements upon Note.— An indictment for forgery charged the forgery of a negotiable note, and set it out inhaee verbas without setting out the endorsements upon the back of it. On the trial when the note was offered in evidence, it was objected to on thé ground of variance. Held, it was not necessary to set out in the indictment the endorsements upon the note, or any other matter written upon the same paper, constituting no part of the note itself, and not entering into the essential description of that instrument. Perkins v. The Commonwealth, 7 Gratt. 651, 56 Am. Dec. 123.
In setting out a counterfeit bank note in haee verba, in an indictment for feloniously passing the same, an indorsement appearing to have been made on the note after it was passed, is properly omitted, and the omission is therefore no ground for the objection of variance. Buckland v. Commonwealth, 8 Leigh 732.
TRe receipt described in tRe indictment for uttering it, knowing it to be forged, agrees witR tRe receipt offered in evidence on tRe trial, witR tRe exception that tRe endorsement thereon, “Witness, Susan M. Armstrong,” is omitted therefrom. Held. no material variance. State v. Henderson, 39 W. Va. 147, 1 S. E. Rep. 335.
Variance — Clerical Errors. — In State v. Poindexter, 23 W. Va. 812, in an indictment for forging a negotiable note, the letters “ar” in the word “bearer,” were blurred or blotted, while these letters appeared plainly in the original. Held, this constitutes no variance.
Variance — Abbreviations—Idem Sonans. — In a commitment by a jnstice, of a person for forging an order, in setting out the order Re writes out some words in full, which in the order as set out iu the indictment are abbreviated, as Thomas for Thos., 33 cents for 33 c., Respectfully for Resp’t’y. These are not such'variances as require that the accused should be sent back to a justice for examination. Burress v. Commonwealth, 37 Gratt. 934.
While in an indictment for forgery it is unnecessary to set forth a copy or facsimile of the instrument forged, yet if this is done, and there is a material variance between the copy so set out and the paper offered in evidence, such paper, on motion of the accused, should be excluded from the consideration of the jury. When the alleged forged note is set out in haee verba, and in the body thereof are the vrords “with 6 per Cent. int. from date,” and the note offered in evidence contains no such words, this is a variance, both in substance and legal effect, fatal to the Introduction of such last-mentioned note as evidence in support of the allegations of the indictment. State v. Fleshman, 40 W. Va. 736, 33 S. E. Rep. 309.
Variance — Evidence.—On the trial of an indictment for passing a counterfeit bank note, the prisoner moves to exclude the note produced from going In evidence to the jury, on the ground that the name of one of the firm of engravers, set out in the description of the note in the indictment, does not appear on the note produced: the attorney for the commonwealth proves, that when he drew the Indictment, he had been able to make out the name on the note, from his knowledge that one of the firm of engravers bore that name, though he cannot say he would have been able to do so without the knowledge of that fact; but that the word had since become indistinct, he supposes, by handling the note. The court thereupon overrules the motion to exclude, and permits evidence to be given of the passing of the note produced. Held, it was right for the court to do so. Buckland v. Commonwealth, 8 Leigh 733.
New Indictment — Variance—Autrefois Acquit. — To a plea of avtrhfois acauit, upon an indictment for forgery, the attorney for the commonwealth craves oyer of the former record, and demurs to the plea. The record shows that the indictment was for forging an order for forty-seven dollars and twenty-five cents, and that the order was for forty-seven dollars and twenty-three cents. This was a variance which entitled the accused to acquittal on that indictment; and therefore the acquittal on that' indictment does not forbid the prosecution of the accused on another indictment for the same forgery, setting out the order correctly. Burress v. Commonwealth, 37 Gratt. 934. See especially, mono-graphic note on “Autrefois, Acquit and Convict,” appended to Page v. Commonwealth, 36 Gratt. 943.
Indictment — Uncertainty of Counts — Venire Facias de Novo. — The indictment charges in one count the forgery of a note, and in another count the forgery of an endorsement upon the note. The jury find the prisoner not guilty on the first count; and then say, “On the second count, viz: that of uttering a negotiable note knowing it to be forged, we find the prisoner guilty, and affix the term of his imprisonment for the term of two years.” The verdict upon the second count'is too uncertain to authorize any judgment upon it; and a venire facias de novo on that count should be awarded. Cocke v. The Commonwealth, 13 Gratt. 750.
Indictment — Misjoinder of Counts. — The joinder of two or more offences In one count is not permitted. But if the whole transaction be only parís of one fact of endeavor, all the parts may be stated together as one offence — e. g., a man may be indicted for the battery of two or more persons in the same count, etc. And so, an indictment charging In one count the forgery of a check and of the endorsement thereon, is not liable to the obj ection of duplicity or misjoinder. Sprouse v. Commonwealth, 81 Va. 374.
*597 Indictment — Irregularities— Curative Effect of Verdict. — In an indictment for the forgery of bank notes, instead of setting1 oat the tenor of the forged notes, the attorney “for greater certainty as to their identity,*’ referred to them as “being annexed*’ hereto, and actually did annex them. The prisoner did not move to quash the indictment, nor did he plead in abatement, but pleaded the general issue, and a verdict was rendered against him. Although this is a careless and irregular mode of counting, yet after verdict the irregularity is cured by the act of j eofails. A charge that a forgery of bank notes was committed, with intent to injure “divers good citizens of the commonwealth and others, to the jurors unknown,” without setting out an intent to injure the president, directors and company of those banks, or of any particular person, or body politic, by name, is good after verdict. So, to charge that the prisoners willingly acted and assisted in false making and forging, without setting outin particular any person who was assisted: So, to charge them with causing and procuring the forged notes to be passed, without setting out the persons whom, the prisoners caused or procured to pass them, nor to whom-. So, to charge them with passing them to W. S. with intent to defraud the said W. S. and others: So, also, to charge them with causing and procuring them to be passed or exchanged. Held, good after verdict. The Commonwealth v. Ervin and Lewis, 2 Va. Cas. 337.
Indictment — Counts—Verdict.—An indictment (described in the record of the finding, and in the entry of the arraignment, as an indictment for forgery) contains: 1, a count for forgingand counterfeiting a note: and 2. a count for feloniously using and employing as true a counterfeit note; verdict finds the prisoner guilty of forgery, as alleged in the indictment. Held, an acquittal must be entered on the second count Page v. Commonwealth, 9 Leigh 683.
Indictment for Forging — Trial for Uttering — Quashing Indictment. — A prisoner is committed for examination. is examined, and remanded by the examining court for trial, for ‘ ‘feloniously using and employing as true, for his own benefit, a certain counterfeit note, well knowing the same to be counterfeit.” Held, an indictment for forging the note is not warranted by the examination, and must be quashed. Page v. Commonwealth, 9 Leigh 683.
VI. EVIDENCE.
Evidence — Forged Instrument. — A forged paper is passed by a prisoner bearing date in 1828; immediately after, with the knowledge of the holder, the prisoner alters the date to 1827. The indictment sets forth its tenor, and describes it as dated in 1827. The paper is proper evidence to go to the jury in support of the indictment, notwithstanding the proof that it bore date in 1828, when passed. Huffman v. The Commonwealth. 6 Hand. 685.
Upon the trial of an indictment against M. for passing counterfeit bank notes, the prisoner appears clearly to have been confederated with one L. in passing counterfeit notes, and present when L. passed such notes; the notes so passed by L. are produced in evidence against the prisoner. Held, they are proper evidence. Martin v. The Commonwealth, 2 Leigh 715.
Variance from Indictment. — The difference between “account” as set out in the indictment and “acct” as written in a forged order, is not a material variance, which will exclude the order as evidence. Burress v. Commonwealth, 27 Gratt. 934.
Proof of Non-Genuineness of instrument. — Upon a trial for forgery of a written instrument, the commonwealth may, without producing as a witness the party by whom the instrument purports to be signed, and without accounting for his absence, prove by the evidence of other witnesses that the instrument is not genuine; such evidence not being in its nature secondary to that of the party whose signature is in question. Foulkes v. The Commonwealth, 2 Rob. 836.
Production of Counterfeit Coin — When Excused. — In a prosecution for passing a counterfeit coin to a person who resides in another state, if a subpoena for such person as a witness has been issued and returned not found, the fact of the passing, and the counterfeit character of the coin, may be proved without producing the coin at the trial. It seems, that in a prosecution for passing a counterfeit coin, the prosecutor is at liberty to prove the fact of the passing, and the counterfeit character of the coin, without either producing the coin, or accounting for its nonproduction. Kirk v. Commonwealth, 9 Leigh 627.
Evidence-Proof of Handwriting. — Upon a trial for forgery, to prove that the paper was forged, a witness was introduced, who said that he knew IL, the party whose signature was in question, and who was dead, about two years; was his tenant; had seen him write; thinks he knew his handwriting tolerably well; but could not swear to a particular signature as his, without knowing the fact; thought he had a sufficient knowledge or recollection of his signature to enable him to give an opinion as to the genuineness of his signature, though he would not swear absolutely about it. Says: I think it is not his handwriting; but at the same time, I cannot say on oath positively it is not. This is admissible evidence. Chahoon v. The Commonwealth, 20 Gratt. 733.
Change in Handwriting. — Upon such trial it was not error to ask a witness if the handwriting of the person whose name was alleged to have been forged had changed. State v. Henderson. 29 W. Va. 147, 1 S. E. Rep. 226.
Proof of Handwriting — Comparison.—Upon a trial for uttering a forged receipt, witnesses may testify as to the handwriting in the alleged forged receipt; and, being acquainted with the signature of the person's name purporting to be signed thereto, may before the jury make the letters of such person’s name as they think he makes them, and the jury may compare such letters, so made, with the letters in the alleged signature. State v. Henderson, 29 W. Va. 147, 1 S. E. Rep. 225.
A witness who states that he is perfectly familiar with the handwriting of the accused, and states the circumstances which made him so familiar with it, expresses the confident opinion from his knowledge of the accused’s handwriting, that he was incapable of writing the order. This opinion is incompetent testimony, and properly excluded. Burress v. Commonwealth, 27 Gratt. 935.
Submission to Jury of True and Forged Signatures. —Upon such trial the jury will not be permitted to receive the proved, but not admitted, signature of the person, when none had been alleged to have been forged, so as to permit them to compare the two signatures. Much less would it be proper to permit evidence to go to the jury by a witness that he had compared the alleged forged signature with one admitted to be genuine, and they were exactly alike. State v. Henderson, 29 W. Va. 147, 1 S. E. Rep. 226.
*598 Possession as Presumptive Evidence of Guilt — Venue. —Upon trial of an indictment for forging* bank notes, the fact if proved, of the forged notes mentioned in the indictment, and other forged notes of like kind, and the plates, implements and materials, for forging such notes, being found in the prisoner’s possession, is prima facie or circumstantial, presump-; tive evidence, that the prisoner was the forger, proper to be given to the jury. And such forged notes, etc., being found in possession of the prisoner in the county of B, is like prima facie evidence, proper to be given to the jury, of the fact that he committed the forgery there. Spencer v. Commonwealth, 2 Leigh 751.
Irrelevant Documents. — A genuine order by the same drawers upon the same party, whiéh had been paid to the accused, as the order which the accused was charged with having forged, is not competent evidence for the accused. Burress v. Commonwealth, 27 Gratt. 935.
Bank Clerk’s Book Entries. — Upon a trial for the forgery of an endorsement on a note, the commonwealth having proved that the note went into the 'prisoner’s possession, and notice to the prisoner to •produce it, may prove the note and the forgery in its absence; and the note having been deposited in bank for collection, the original entries in the book of the note clerk of the bank, proved by the clerk to have been made by him from the note, are competent evidence to prove that the note and endorsement thereon were as described in the indictment. Cocke v. The Commonwealth, 13 Gratt. 750.
Deed — Note—Witnesses,—A deed connected with a transaction with which an alleged forged receipt is connected, is competent evidence on a trial for uttering such forged receipt. The note, which pur, ports to have been paid by money of which the alleged forged receipt is the evidence of such payment, is competent evidence upon a trial for uttering such forged receipt. Upon such trial it is proper to ask a witness, as to the money mentioned in the note, how it was applied, and to admit the answer, “It was applied on the land mentioned in the deed.” State v. Henderson, 29 W. Va. 147, 1 S. E. Rep. 225.
Records — Depositions.—Upon the trial of an indictment for uttering, and attempting to employ as true, a forged receipt for money, knowing it to be forged, the record of a cause in chancery between the person so uttering and the person whose name is alleged to have been forged, which record includes a deposition to the genuineness of the receipt, taken by the accused, all tend to show that the accused did utter, and attempt to employ as true, said receipt, and is competent evidence. State v. Henderson, 29 W. Va. 147. 1 S. E. Rep. 225.
Pecuniary Condition of Person Whose Note Is Forged. —In Sands v. Commonwealth, 20 Gratt. 800, it was held that, on a trial for the forgery of a note of a person who has since died, the commonwealth may prove that such person was prompt in the payment of his debts, and that he owned a large property-real and personal, — and was doing a good business. See also, Chahoon v. Commonwealth, 20 Gratt. 733.
Pecuniary Condition of Accused. — Upon such trial it is proper to inauire into the pecuniary condition of the person in whose favor the alleged forged receipt purports to have been given, at or about the date of such receipt. State v. Henderson, 29 W. Va. 147, 1 S. E. Rep. 225.
. Elements to Be Considered by Jury. — To convict of forgery, the jury must be governed entirely by the testimony before them, and they must not presume or assume the guilt of the accused, by reason of his failure or neglect to produce evidence in his own behalf. But if the jury believe that it is in the power of the accused to produce evidence in elucidation of the subject matter of the charge against him, then his failure or neglect to produce such evidence may be considered by the jury, in connection with the other facts proved in the case. Chahoon v. The Commonwealth, 20 Gratt. 734.
Examination of Accused. — It is error to allow one accused of forgery, on trial therefor, to be interrogated as to other similar papers, unless it is first shown that such papers were forged, and the accused had culpable connection therewith. State v. Lowry, 42 W. Va. 205, 24 S. E. Rep. 561.
Compulsory Admissions. — Where prisoner was charged with forging a check payable to Gibson, and forging Gibson’s name on it, the mayor asked him to write the name “Gibson.” Prisoner reluctantly, but without threat or promise, wrote and misspelt it with a p instead of a 1>, just as it was misspelt in the forged writing. This was not compelling him to furnish evidence against himself. Sprouse v. The Commonwealth, 81 Va. 374. See especially, monographic note on “Confessions” appended to Schwartz v. Commonwealth, 27 Gratt. 1025.
Production of Forged Instrument — Secondary Evi= dence. — On the trial of an indictment for forgery of a check on a bank, if there be proof rendering it highly probable that the original paper has been lost or destroyed, though this was not done by the accused or by his procurement, secondary evidence of the contents, character and description, of the paper, is admissible to sustain the prosecution. Pendleton v. The Commonwealth, 4 Leigh 694, 26 Am. Dec. 342.
Secondary Evidence — Foundation for Its Admission.— On trial of indictment for forgery of a letter of credit with intent to defraud W. & W-, the commonwealth proves that a draft, presented by the prisoner to W. & W. at the same time with the letter of credit, had been filed, together with an indictment against the prisoner for forging the same, with the clerk of the court, who, on making search for the draft among the papers in his office, has been unable to find it; and thereupon the commonwealth offered secondary evidence of the contents of the draft; no notice having been given to the prisoner, before the jury was impanelled, of any intention to offer such evidence. Held, the foundation so laid for the admission of the secondary evidence is sufficient. Foulkes v. The Commonwealth, 2 Rob. 836.
On the trial of a person accused of forgery the alleged forged paper must be produced, or its non-production satisfactorily accounted for, by showing it to be lost, destroyed, or in the hands of the accused or his friends; and, in the latter case, notice to produce it must be given to the accused or his counsel before evidence of its existence, character, and contents is admissible. State v. Lowry, 42 W. Va. 205, 24 S. E. Rep. 561.
VII. PUNISHflENT.
Statutes. — The manner and degree of punishment for the offense of forgery is fixed by statute in Virginia and West Virginia. See Va. Code, 1887, §§ 3733-3740; W. Va. Code, 1889, ch. 146.
VIII. ON APPEAL.
Habeas Corpus. — The prisoner being in the penitentiary, he will be brought before the appellate court bywritof habeas corpus, and committed to the sheriff *599 oí the county of Henrico, to lie taken back to the county from whence he was sent. Jones v. Commonwealth, 20 Gratt. 848.
Remanding for New Trial. — On a trial for a felony, for which the shortest term of imprisonment is five years, the jury find the prisoner guilty, and fix the term of his imprisonment in the penitentiary at three years; and the judgment is according to the 'verdict. Upon a writ of error to the judgment, on the application of the prisoner, the judgment will he reversed; hut the prisoner will not he discharged, hut will he remanded for another trial. Jones v. Commonwealth, 20 Gratt. 848.